STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DALE JONES, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 1, 1988—Decided April 13, 1988.

residence is permitted only if one's parents had come from a particular city in Europe or even in this Country, the exclusion might be thought of as discriminatory. In the negative, *i.e.,* if residence could be denied merely because one's parents had resided at a particular location, the exclusion would certainly be discriminatory. These instances, however, must be distinguished from the restriction here before us which seeks to promote family solidarity and to enable children of existing residents to reside close to their parents. Although the restriction on resale of the units by the Corporation is based in part upon ancestry in the communal as opposed to the individual sense, when we read the provision in context as did the judge in *Whateley, supra,* we do not see any invidious application by the Corporation.

Before Judges PRESSLER, MUIR, Jr. and SKILLMAN.

*Edward P. Hannigan,* Deputy Public Defender II, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney; *Edward P. Hannigan,* of counsel and on the brief).

*Cathleen Russo Delanoy,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *Cathleen Russo Delanoy,* of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Defendant was convicted by a jury of armed robbery, in violation of *N.J.S.A.* 2C:15-1, second degree aggravated assault, in violation of *N.J.S.A.* 2C:12-1(b)(1), third degree aggravated assault, in violation of *N.J.S.A.* 2C:12-1(b)(2), and possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39-4(a). The trial court merged the aggravated assault and weapons convictions into the armed robbery conviction and sentenced defendant to a 20 year term of imprisonment with 7 years of ineligibility for parole.

Defendant's convictions were based on his participation with two others in an armed robbery of a flower shop in New Brunswick. The only person present when the crime was committed was the manager, Marjorie Mason. According to Ms. Mason, one perpetrator, whom she identified as defendant, came up behind her, put his arm around her neck and a gun to her head, and said "this was a stick up." After she opened the cash register, the robber identified as defendant demanded that Ms. Mason give him her jewelry. When she refused, he pointed the gun in her face, and when she pushed the gun away, it fired into the ceiling. She then struggled with the robber, who hit her twice in the face with the butt of the gun.

The prosecution's case rested almost entirely on Ms. Mason's identification of defendant as the perpetrator with the handgun. Ms. Mason identified defendant from an array of photographs shortly after the crime and in person during trial.

The defense was based primarily upon the results of a polygraph test taken by defendant. This test was administered by Lieutenant Zimmerman of the Middlesex County Prosecutor's office pursuant to an agreement between defendant and the prosecutor's office that the results would be admissible at trial. Lieutenant Zimmerman testified that defendant was being truthful when he stated during the polygraph test that he

was not involved in the holdup.[1]

■ Defendant testified in his own defense that he was at home in Somerset at the time the crime was committed. His testimony was corroborated by his mother and his girlfriend.

On appeal defendant makes the following arguments:

POINT I: THE TRIAL COURT'S CHARGE ON POLYGRAPH EVIDENCE DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE PRESUMPTION OF INNOCENCE, SHIFTED THE BURDEN OF PROOF AS TO HIS GUILT FROM THE STATE TO THE DEFENSE, DEPRIVED HIM OF A FAIR TRIAL AND, IN ADDITION, WAS CLEARLY CONTRARY TO THE LAW OF NEW JERSEY GOVERNING THE WEIGHT AND EFFECT TO BE ACCORDED BY A JURY TO POLYGRAPH EVIDENCE FAVORABLE TO A DEFENDANT (NOT RAISED BELOW).

POINT II: THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR IN FAILING TO GIVE THE JURY THE MODEL CHARGE ON IDENTIFICATION TESTIMONY.

We conclude that the trial court's charge with respect to the results of the polygraph test incorrectly indicated to the jury that defendant had a burden to present sufficient evidence of his innocence. Therefore, we reverse and remand for a new trial.

■■ A trial court has a responsibility to properly charge the jury regarding the applicable law. *State v. Grunow*, 102 *N.J.* 133, 148 (1986). One basic principle of our criminal justice system which the jury must be told is that the State is required to prove the defendant's guilt beyond a reasonable doubt. *State v. Ingenito*, 87 *N.J.* 204, 214 (1981). A corollary of this principle which the jury also must be told is that reasonable doubt may arise solely from a lack of evidence presented by the prosecution. *State v. Hudson*, 38 *N.J.* 364, 374–379 (1962); *State v. Walker*, 33 *N.J.* 580, 594–595 (1960); *State v. De Paola*, 5 *N.J.* 1, 8–9 (1950). Therefore, our courts have repeatedly found reversible error where a jury has been told that a defendant has any burden to prove his innocence. *See, e.g.,*

---

[1]Although this testimony was presented during the State's case, it was favorable in all respects to defendant.

*State v. Grunow, supra,* 102 *N.J.* at 144–145; *State v. Gardner,* 51 *N.J.* 444, 456–459 (1968).

The part of the trial court's charge dealing with the State's burden of proof accurately conveyed the applicable law, including the principle that reasonable doubt as to defendant's guilt can arise from a lack of evidence. However, the part of the court's charge dealing with the polygraph test results conveyed the erroneous impression that defendant had the burden to produce evidence of his innocence. This part of the court's charge reads as follows:

> In that same regard, ladies and gentlemen, you should understand that as a general rule in New Jersey, neither the state nor a defendant may offer in evidence in a criminal trial the results of a polygraph test administered to a person. The results of such tests are not considered as conclusive under the law. However, where the state and the defendant agree before trial to the administering of a polygraph test to a defendant, and also stipulate that either party may offer in evidence at trial the results of that polygraph examination, whether they're favorable or unfavorable, then the opinion of the expert who administered the test as to the results are stipulated to be admissible in trial and in evidence. So the testimony was offered in this trial. With respect to that testimony and relating specifically to the polygraph examination, *the expert's opinion as to the results of his examination does not prove or disprove any element of the crime,* as I will define those elements for you in a few moments, but merely indicates that at the time questioned the defendant in the opinion of the expert answered the questions truthfully—I'm sorry—whether the defendant answered the questions truthfully or deceptively.
>
> So you are entitled to take into consideration the expert's opinion that the defendant answered certain relevant questions truthfully, but *the opinion is not by itself sufficient evidence to support a finding of guilt or innocence.* It is, however, probative evidence on the issue of guilt or innocence and may be considered by you along with all of the other evidence in the case bearing upon the question of guilt or innocence. It is for you to determine what corrobative [*sic* ] weight and effect should be given to that expert testimony as it's been offered in this case. [Emphasis supplied].

Initially, we note that this instruction was confusing. The trial court's statement that the polygraph expert's opinion "does not prove or disprove any elements of the crime charged ... but merely indicates ... whether the defendant answered the questions truthfully or deceptively" implied that the jury could find that the polygraph results indicated defendant had

answered questions deceptively. The trial court's reference to the test results supporting a finding of defendant's "guilt or innocence" contained a similar implication. However, the only evidence before the jury regarding the polygraph results was Lieutenant Zimmerman's testimony that defendant was telling the truth when he said that he had not committed the crime. Therefore, the trial court's instruction that the jury could consider the results of the polygraph test as indicating that defendant answered the polygrapher's questions "deceptively" or that his answers could support a finding of "guilt" undoubtedly confused the jury.[2]

The more fundamental error in the trial court's charge was the statement that "[t]he [expert's] opinion is not by itself sufficient evidence to support a finding of guilt or innocence." This statement implied that the defendant had a burden to present evidence of his innocence. It further implied that this burden could not be satisfied by the polygrapher's opinion alone but had to be supported by other evidence. Such an understanding on the part of the jury would be contrary to the fundamental principle that the State must prove a defendant's guilt beyond a reasonable doubt and that such doubt may be generated not only by the evidence presented but also by a lack

___

[2]The trial court's charge was taken from the Model Criminal Jury Charge on Polygraph Evidence § 4.250 (Approved July 11, 1977), which reads in pertinent part:

> Therefore, the expert's opinion that the defendant answered certain relevant questions deceptively (truthfully) is not by itself sufficient evidence to support a finding of guilt (or innocence). It is, however, probative evidence of the issue of guilt (or innocence) and may be considered by you along with all of the other evidence in the case, bearing upon the issue of guilt (or innocence).

The evident intent of the drafters of this model charge was that the words in parentheses (e.g., truthfully) would be substituted for the preceding words (e.g., deceptively) in cases where the polygraph results were favorable to defendant. However, it is inappropriate to use both words disjunctively except in a case where there is conflicting evidence as to whether the polygraph results are favorable to the prosecution or to the defendant.

of evidence. *State v. Hudson, supra; State v. Walker, supra.*[3] In addition, the reference to a "finding of innocence" and the similar reference to the polygraph evidence being "probative on the issue of guilt or innocence" had the clear capacity to improperly direct the jury's deliberations to whether defendant had proven his "innocence" rather than whether the State had proven his guilt beyond a reasonable doubt.

Although defendant acquiesced in the charge regarding the polygraph evidence, the error in this part of the trial court's charge was clearly capable of producing an unjust result and hence requires a new trial. *R.* 2:10–2. The Supreme Court has recently commented that:

> We have always placed an extraordinarily high value on the importance of appropriate and proper jury charges to the right to trial by jury. Erroneous instructions on matters or issues material to the jurors' deliberations are presumed to be reversible error.... The right to a trial by jury includes certain intangible but real benefits to a defendant that are lost whenever the jury is induced to think incorrectly in terms of guilty.... So paramount is the duty to insure a fair trial that a jury must deliberate in accordance with correct instructions even when such instructions are not requested by counsel. [*State v. Grunow, supra,* 102 *N.J.* at 148 citations omitted].

The State's case against defendant rested entirely on the the victim's identification. Although that identification was strong, the fact that defendant had "passed" a polygraph test could have led the jury to doubt the accuracy of the victim's identification. Therefore, defendant is entitled to a new trial in which

---

[3]As noted in footnote 2, the trial court's charge with respect to the polygraph results essentially followed Model Criminal Jury Charge § 4.250. The model charge accurately conveys the applicable law in a case in which the polygrapher testifies that a defendant has been untruthful in his answers to the relevant questions. *See State v. Baskerville,* 73 *N.J.* 230, 235 (1977); *State v. McDavitt,* 62 *N.J.* 36, 47 (1972). However, the model charge in its present form should not be used in cases in which the polygrapher testifies that defendant has been truthful in denying complicity in the crime charged. While we understand that it is relatively unusual for a defendant who has passed a polygraph test to be prosecuted, the Supreme Court Committee on Model Criminal Jury Charges may wish to consider drafting an appropriate charge to be used in such cases.

the jury is correctly instructed as to the significance of the polygraph test.

Since the errors in the trial court's charge with respect to the polygraph test require a new trial, there is no need to pass upon defendant's contention that the court's failure to give a specific charge on identification constituted reversible error. However, in view of the significance of the identification testimony in this case, the trial court at the retrial should include a specific charge on identification if requested by defendant. *See State v. Green*, 86 *N.J.* 281, 291–294 (1981); *State v. Frey*, 194 *N.J.Super.* 326, 328–330 (App.Div.1984).

The conviction is reversed and the case is remanded for a new trial.