712 A.2d 224 (1998)
STATE of New Jersey, Plaintiff-Respondent,
v.
Delbert GREEN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1998.
Decided June 12, 1998.
*225 Linda Mehling, Assistant Deputy Public Defender, for defendant-appellant (Ivelisse Torres, Public Defender, attorney; Mr. Mehling, of counsel and on the brief).
Barbara A. Rosenkrans, Special Deputy Attorney General, for plaintiff-respondent (Patricia A. Hurt, Essex County Prosecutor, attorney; Ms. Rosenkrans, of counsel and on the brief).
Before Judges PRESSLER, CONLEY and CARCHMAN.
The opinion of the court was delivered by CARCHMAN, J.S.C. (temporarily assigned).
This case again raises the issue of the necessity of providing the jury with a special charge on identification where the critical issue in dispute is the identification of defendant, and defendant requests such charge. After a trial resulting in a hung jury, defendant Delbert Green was again tried and convicted of first degree armed robbery, N.J.S.A. 2C:15-1; fourth degree possession of knife under circumstances not manifestly appropriate for such lawful uses as it may have, N.J.S.A. 2C:39-5(d); and third degree possession of a knife with the purpose to use it unlawfully against the person of another, N.J.S.A. 2C:39-4(d). Defendant was sentenced to an aggregate term of fifteen years in prison. Defendant appeals and claims numerous trial errors. We conclude that the trial judge's refusal to charge the jury on identification was plain error, clearly capable of producing an unjust result, R. 2:10-2, and warrants a new trial. Accordingly, we reverse and remand for a new trial.
To put the issue in context, we briefly relate the facts adduced at trial. On October 14, 1995, Marie Noelcin was in the parking lot of a bank at Irvington Center when a man put his hand on the car door, put a knife to her side and said "Give me the chain." He then grabbed the $1,000 gold chain and medallion from her neck and ran. Noelcin described the man as a thin black man with a moustache, wearing a baseball hat, jean shorts and a black shirt. At the first trial, Noelcin was initially unable to identify defendant but did soon thereafter. At the second trial, she again identified defendant as the man who robbed her.
After the man left, Noelcin screamed and two men, Ray Belen and his brother-in-law, Saleem Dawson, came to her aid. She explained what had happened, and Belen proceeded to give chase for about two blocks but was unable to catch the robber. He described the man, whom he only saw from the back, as wearing a hat, dark jeans and a dark jacket. Noelcin, Belen and Dawson drove in Noelcin's car and proceeded to search for the man.
Defendant was observed near the Pathmark supermarket, a few blocks away. When confronted, defendant indicated he was coming from the Pathmark and denied taking *226 the chain. He then walked away and was followed by the three in the car.
The trio followed defendant, at one point offering money for the return of the chain, to Beth Israel Hospital in Newark. At the hospital, various discussions took place between defendant, Noelcin and security officers at which time it was established that defendant was carrying a knife. Defendant steadfastly denied taking the chain while Noelcin continued her accusations that defendant had robbed her.
The police initially learned of the incident when a call was received by the Irvington Police Department at about 5:30 p.m. that a woman was screaming in the bank parking lot in Irvington Center. The police arrived a few minutes later but found no one present. At 7:15 p.m., the police proceeded to Beth Israel where they investigated the robbery. Again, Noelcin accused defendant of the robbery, and, again, defendant denied involvement. A protective pat-down of defendant revealed a black handled folding knife. Defendant was arrested. At the police station, the police recovered a baseball hat from defendant's coat. A search of defendant failed to produce the chain.
Defendant testified on his own behalf and claimed that he had been dropped off at the Pathmark by a friend, Ray Snell. He then walked a short distance to a Merit Gas station where he made a collect call to his girlfriend, Yolanda Hadley. While walking to her house, he was approached by Noelcin, Belen and Dawson. Both Snell and Hadley corroborated defendant's version of the events. In fact, Hadley's phone bill establishes that the call was made at 5:12 p.m.
During defense counsel's summation, counsel focused the jury's attention on the identification issue. The trial judge charged the jury but did not give the special identification charge despite defendant's request, the judge commenting, "it's covered in the elements and the authorities say that's sufficient when it comes to identity." After the charge, the jury returned with a series of questions, most of which were directed to the issue of identification. The jury returned a verdict of guilty on all charges. This appeal followed.
On appeal, defendant raises the following issues:
POINT I THE TRIAL COURT'S REFUSAL TO CHARGE THE JURY ON IDENTIFICATION, WHEN IDENTIFICATION WAS THE ESSENTIAL ISSUE IN THE CASE, DEPRIVED DEFENDANT OF A FAIR TRIAL.
POINT II DEFENDANT WAS DEPRIVED OF A FAIR TRIAL BECAUSE THE TRIAL COURT IMPROPERLY BARRED DEFENSE COUNSEL FROM ARGUING IN HIS SUMMATION THAT DEFENDANT HAD PRODUCED ALIBI EVIDENCE AND THEN FAILED TO INSTRUCT THE JURY ON DEFENDANT'S ALIBI DEFENSE. (Partially Raised Below)
POINT III IMPROPER RESTRICTIONS ON DEFENSE COUNSEL'S CROSS-EXAMINATION OF BOTH THE VICTIM AND A STATE'S WITNESS DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES.
A. The Trial Court's Restrictions On Defendant's Right To Cross-Examine Ray Belen For Bias Deprived Defendant Of His Right To A Fair Trial.
B. The Trial Court's Refusal To Allow Defense Counsel To Elicit The Victim's Statement That She Would Identify The Perpetrator "If He Shows Up Here" Was Prejudicial Error.
POINT IV THE TRIAL COURT'S REFUSAL TO GRANT DEFENSE COUNSEL'S REQUEST FOR A BRIEF ADJOURNMENT SO THAT A CHARACTER WITNESS COULD TESTIFY TO DEFENDANT'S GOOD CHARACTER DENIED DEFENDANT A FAIR TRIAL.
POINT V THE TRIAL COURT'S REFUSAL TO PROVIDE A FULL AND ACCURATE ANSWER TO A QUESTION ASKED BY THE JURY REQUIRES A REVERSAL OF HIS CONVICTIONS.
POINT VI THE ENTIRE TRIAL WAS SO INFECTED WITH ERROR THAT *227 EVEN IF THE INDIVIDUAL ERRORS, AS SET FORTH, SUPRA, DO NOT CONSTITUTE REVERSIBLE ERROR, THE ERRORS IN THE AGGREGATE DENIED DEFENDANT A FAIR TRIAL. (Not Raised Below)
POINT VII THE FIFTEEN-YEAR TERM IMPOSED UPON MR. GREEN IS MANIFESTLY EXCESSIVE.
We have carefully reviewed the record and conclude that Point I is of merit and warrants a reversal and remand for a new trial. That being the case, Point II, Point IV, Point V, Point VI and Point VII are moot. We deem Point III to be without merit. R. 2:11-3(a)(2). We now turn our attention to the issues raised by Point I.
"Appropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287, 430 A.2d 914 (1981). A court must provide proper instructions to a jury because the "faithful performance of a court's duty of expounding the law for the jury's guidance and instruction requires a plain and clear exposition of the issues." Id. at 288, 430 A.2d 914. The jury charge should therefore cover all essential matters. Ibid. Erroneous instructions on matters or issues that are material to the jury's deliberation are presumed to be reversible error in criminal prosecutions. State v. Warren, 104 N.J. 571, 579, 518 A.2d 218 (1986). We recently commented, "The charge to the jury is the road map for the jury to follow in its quest for the truth. State v. Martin, 119 N.J. 2, 15, 573 A.2d 1359 (1990). There is little room for shortcuts or abbreviated charges which preclude the jury from finding its way." State v. Allen, 308 N.J.Super. 421, 431-32, 706 A.2d 220 (App. Div.1998). Incomplete or erroneous jury instructions are "poor candidates for rehabilitation under the harmless error philosophy." State v. Simon, 79 N.J. 191, 206, 398 A.2d 861 (1979).
The necessity of a proper identification charge has been the subject of extended discussion by our courts. In State v. Green, supra, 86 N.J. 281, 430 A.2d 914, the court held that where identification was the "key issue" and the "major, if not the sole, thrust of the defense," and in view of the "potential danger of mistaken eyewitness identification," the defendant had a right to expect a proper identification charge. Id. at 291-92, 430 A.2d 914. Failure to give such charge was found to be plain error. Id. at 294, 430 A.2d 914.
Thereafter, in State v. Frey, 194 N.J.Super. 326, 476 A.2d 884 (App.Div.1984), we held that the failure to give the Green charge, even though not requested, was plain error where there was an absence of eyewitnesses other than the victim, and defendant denied guilt. "Given the total circumstances surrounding the events under scrutiny and the limited period of time the victim was able to see the perpetrator before her eyes were taped, the potential for a mistaken identification becomes readily apparent." Id. at 329, 476 A.2d 884. We added that "[t]he Model Jury Charge on identification instructs the jury on how to determine identification and the reliability of that identification." Id. at 330, 476 A.2d 884.
We reached a different result in State v. Salaam, 225 N.J.Super. 66, 541 A.2d 1075 (App.Div.1988), but observed that "the corroborative evidence offered by the State render[ed] the issue of identification far less compelling than it was in Green or Frey." Id. at 70, 541 A.2d 1075. The failure to give the identification charge there was not plain error. In Salaam, unlike here, the victim observed defendant for five minutes before the robbery and defendant was returned to the scene, in custody ten minutes after the robbery and possessed a number of one-dollar bills, the primary denomination of monies taken. In addition, defendant also possessed the toy pistol that was used in the robbery.
We have further addressed the identification issue in two recent casesState v. Middleton, 299 N.J.Super. 22, 690 A.2d 623 (App. Div.1997), and State v. McNeil, 303 N.J.Super. 266, 696 A.2d 757 (App.Div.1997). In Middleton, no identification charge as prescribed in State v. Green, supra, was given or requested. We commented that "[i]t is well settled that when identification is the crucial issue in the case, the defendant is entitled to a discrete and specific instruction, providing `appropriate guidelines' and `focussing the jury's attention on how to analyze and consider *228 the factual issues with regard to the trustworthiness of [the eyewitnesses's] in-court identification.'" State v. Middleton, supra, 299 N.J.Super. at 32, 690 A.2d 623 (quoting Green, supra, 86 N.J. at 292, 430 A.2d 914).
In McNeil, as here, identification was the only issue in the trial. We held that the identification charge was required under Green. State v. McNeil, supra, 303 N.J.Super. at 273, 696 A.2d 757. And, as here, the charge was requested. While there was some corroborative evidence against the defendant, that evidence was weaker than the corroborative evidence in Salaam and was in substantial dispute. Because of the cumulative error in McNeil, we did not reach the question of whether the failure to charge identification, standing alone, was reversible error. Here, we reach that issue and conclude that the failure to charge identification is itself reversible error.
The State concedes that identification was the main issue in this case, but suggests that failure to charge identification was harmless error. The State argues that there was corroborating evidence in the hat and knife bringing these facts within the scope of Salaam. The State further asserts that the jury instructions made it clear that the State had to prove that this particular defendant committed the robbery. Finally, it urges that defense counsel's ability to emphasize the deficiencies in the victim's identification cured any failure to provide a specific identification charge.
In the charge given, the judge told the jurors that they were to determine the credibility of the witness.
And in determining whether a witness is worthy of belief and, therefore, credible, you may take into consideration various factors. Among those factors are the appearance and demeanor of the witness, the manner in which the witness may have testified, the witness' interest in the outcome of the trial if any, the witness' means of obtaining knowledge of the facts, the witness' power of discernment, meaning the witness' judgment, the witness' understanding, the witness' ability to reason, to observe, to recollect and to relate.
Defense counsel attempted to establish that the victim's emotional state combined with the brief time involved in the robbery caused her to misidentify the defendant. In his closing argument, defense counsel argued:
Marie Noelcin was obviously very upset through this entire ordeal. From the parking lot to Beth Israel, She was very upset. Everybody agrees she was very upset. She was Angry. She was agitated.... And that degree of upset raised her blood pressure and all the things that she talked about and could directly affect what she was seeing[.]
Defense counsel also mentioned the victim's inability to identify defendant at an earlier proceeding:
You heard today when she [the victim] was first asked if she saw the man in court. She said she did not see him. It was only when the Prosecutor said look around that she pointed to Mr. Green and said that's the man.
What does that tell you about the confidence that she herself had in identifying the face, not the clothes, but the face of the person that confronted her in the parking lot?
....
When questioned by the prosecutor after her statement that she didn't see the person in the courtroom, she looked around and identified Mr. Green. Her inability to do that when first asked is something you should think about in deciding whether or not you can rely on what she tells you.
Moreover, one feature of this trial, which distinguishes it from any of the cases discussed above, was the questions asked by the jury. The jury sent a note and requested to
hear the testimony regarding how the defendant was identified on Lyons Avenue by the victim and Ray. For instance, clothing, location of identification and direction of traffic, et. cetera. Two, victim's testimony of what the perpetrator was wearing when the initial robbery occurred.... Three, testimony of Irvington police officer of what Mr. Green was wearing when arrested.
After the judge asked the jury to be more specific, the jury sent another question:
*229 "May we hear the testimony by Mrs. Noelcin concerning when she first saw Mr. Green on Lyons Avenue, what she said to identify him up to the point that Mr. Bellin [sic] began talking to Mr. Green. (We're trying to ascertain how she identified Mr. Green on Lyons Avenue.)" A readback occurred.
All parties understood the issue, and certainly the jury as the finder of fact was entitled to a specific and detailed instruction consistent with the charge approved in Green to assist them in their fact-finding responsibility. Contrary to the State's position, defense counsel's summation and the jury's questions support the view that the identification charge was a critical element missing from the jury instructions.
The trial judge's suggestion in denying the requested charge that the authorities support such denial is in error. Green, Salaam, Frey, and Middleton address the issue in the context of whether it is plain error not to give the charge when no request is made. Here counsel requested the charge. The identification issues in this case were substantial and genuine. The victim identified defendant as wearing short jeans; Belen claimed defendant was wearing jeans. The "corroborative" evidence was a generic baseball hat never identified as to color or distinguishing characteristics.[1] Defendant's whereabouts at 5:12 p.m.minutes before the robberywere corroborated by a telephone bill reflecting a collect call. The victim initially failed to identify defendant in the courtroom. All of these issues compelled an identification charge.
We conclude that where requested and where the facts of the case raise a genuine and substantial issue as to identification, the charge must be given. Insuring a fair trial requires no less. The failure to charge the jury on identification deprived defendant of such protection.
Reversed and remanded for a new trial.
NOTES
[1] The victim also indicated a knife was used but was unable to identify the knife recovered from defendant as the knife used during the robbery.