**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2315-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RICHARD R. HAROLD, a/k/a
RICHARD B. HAROLD, RICKY
HAROLD, RICK HAROLD, RICK
SMITH, ERIC R. HAROLD, and
MIKE SMITH BEY,

    Defendant-Appellant.

_____

Submitted October 22, 2018 – Decided  November 20, 2018

Before Judges Sabatino and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 15-04-0370.

Wayne Powell, attorney for appellant.

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a four-day jury trial in 2016, defendant Richard R. Harold was found guilty of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:12-1(b)(4) (count three); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (count four); and a second-degree "certain persons" weapons possession offense, N.J.S.A. 2C:39-7(b)(1) (count five). The court sentenced defendant to a forty-five-year custodial term on the attempted murder offense in count one, subject to an eighty-five percent parole ineligibility period pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, plus a concurrent ten-year custodial term on the weapons offense in count five. The remaining counts merged at sentencing.

For the reasons that follow, we reverse defendant's conviction and grant his request for a new trial. We do so because of errors in the jury instructions that were not harmless, given the tenor of the issues, the circumstantial nature of the evidence presented by the State of defendant's guilt, and the hotly contested issue of his identity as the perpetrator.

I.

The State presented only circumstantial evidence at trial concerning the underlying shooting incident which it charged as an attempted murder. There were no eyewitnesses to the incident who identified defendant as the shooter, nor any confession by defendant. We proceed to summarize some of the key aspects of the evidence.

On October 25, 2014, Millville City Police responded to a report of shots fired in the parking lot of an apartment complex in Millville. No one believed to be involved with the shooting was present when the police arrived. Shell casings were found in the parking lot. After speaking with local residents the following day, police obtained a copy of an outdoor video recording from a nearby apartment complex that contained footage of the incident. The video showed the shooter firing a weapon, entering a van parked at the location, and leaving the scene. The identity of the shooter is not discernable from the video footage, although it apparently shows he was wearing a black and white shirt.[1] No one was injured or killed, and no eyewitnesses were located. The person(s) who were fired at were not identified.

---

[1] Counsel did not furnish a copy of the video to this court on appeal. However, the State acknowledges the video is not clear enough to identify defendant definitively as the shooter.

A-2315-16T4

Three days later, the police received information from a confidential informant indicating that the defendant had been involved in the shooting. Police Detective Jason Vinzinski and Officer Darrell Meyer, dressed in plain clothes, drove in an unmarked vehicle to a residence in Newfield looking for the defendant. They parked in the driveway outside the residence and waited for the defendant to appear. Eventually he did so, apparently to dispose of some trash.

Officer Vinzinski testified that he made eye contact with defendant at that time, after which defendant briefly reentered the residence, reemerged, and drove away in a silver car.[2] Throughout this encounter, the officers never attempted to identify themselves or communicate with defendant, and they did not follow him when he left. They remained at the location, where they were joined by other officers who conducted a search of the residence.

During the trial, the State relied on several items of circumstantial evidence to attempt to connect defendant with the shooting. In particular, the State contended that the same gold van that appears in the video footage was present at the residence where the defendant was found on October 28. The van

_____

[2] This incident was the basis for the trial court's flight instruction, which the defense contends was erroneous and unduly prejudicial. We discuss that issue in Part II(A), infra.

was registered under the name of Linda Harold, defendant's mother. In addition, the State claimed that the shooter depicted in the video was wearing the same black and white shirt that police later found at the residence. Also, police found a .40-caliber Smith and Wesson handgun at the residence, which generated test shells matched by a ballistics expert to the shells found at the scene of the shooting.

The State did not present any in-court or out-of-court identification of defendant as the perpetrator of the shooting. Although mail bearing the defendant's name was found at the residence, his ex-girlfriend and mother both testified that he did not live there. The residence belonged to the defendant's ex-girlfriend, who was in the process of moving out and who claimed she had granted defendant and his brother only limited access. She testified that she had never seen the black and white shirt before, and that it was not the defendant's "style."

Forensic analysis was unable to confirm a match between defendant's buccal swab and DNA collected from the black and white shirt. Furthermore, Linda Harold testified that she allowed only her other son, Robert Harold, to borrow her gold van, and that Robert did so on the day that the shooting occurred. According to the mother, Robert returned the van with a broken

windshield the next day, and took the van to be repaired at a local auto glass shop.

Robert Flem, an employee at the auto glass shop that serviced the gold van on October 27, 2014, two days after the shooting, did not identify defendant as the person with whom he interacted that day. The repair receipt states that the customer's name was "Rick Smith."

Defense counsel strenuously argued at trial that defendant was not the perpetrator of the shooting, nor responsible for possession of the seized weapon. On appeal, defendant argues the jury received improper and inadequate instructions, and that he is entitled to a new trial.

Specifically, defendant raises the following points in his brief:

> POINT I
>
> THE JURY CHARGE GIVEN BY THE COURT ON THE ISSUE OF FLIGHT WAS NOT SUPPORTED BY THE RECORD AND ACTED TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL.
>
> POINT II
>
> THE COURT'S FAILURE TO CHARGE THE JURY ON THE ISSUE OF IDENTIFICATION ACTED TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL.
> (Not raised below)

A-2315-16T4

## II.

Our appellate courts generally review alleged flaws in jury charges guided by the standards of Rule 2:10-2. The Rule provides that "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2; see also State v. Ingram, 196 N.J. 23, 49 (2008). To make such a determination, our courts have inquired whether the possibility of injustice arising from the erroneous jury charges was "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971); see also State v. Jackmon, 305 N.J. Super. 274, 277 (App. Div. 1997).

"Erroneous jury instructions on matters material to a jury's deliberations are ordinarily presumed to be reversible error." Jackmon, 305 N.J. Super. at 277-78. A jury charge serves as a "road map to guide the jury, and without an appropriate charge, a jury can take a wrong turn in its deliberations." State v. Nelson, 173 N.J. 417, 446 (2002) (quoting State v. Martin, 119 N.J. 2, 15 (1990)). The Supreme Court has repeatedly emphasized that "clear and correct jury instructions are essential for a fair trial." Nelson, 173 N.J. at 446.

To determine whether alleged defects in a jury charge rise to the level of such reversible error, we must consider those claims within the context of the charge as a whole, not in isolation. State v. R.B., 183 N.J. 308, 325 (2005); see also State v. Chapland, 187 N.J. 275, 289 (2005). When examining the entire charge, the reviewing court should consider whether the erroneous instruction was fatal to the conviction. Jackmon, 305 N.J. Super. at 299 (citing State v. Rhett, 127 N.J. 3, 7 (1992)). If the court finds that prejudicial error did not occur, the jury's verdict must stand. State v. Coruzzi, 189 N.J. Super. 273, 312 (App. Div. 1983); see also State v. Loftin, 146 N.J. 295 (1996).

Guided by these principles, we consider, in turn, each of defendant's allegations of error concerning the jury charge.

A.

Over defendant's objection, the trial court issued a flight charge upon determining there was sufficient evidence for the jury to infer that there could have been flight by defendant indicative of a consciousness of guilt. Although flight by an accused may be admissible to demonstrate his or her consciousness of guilt, there must be sound evidential support for such an inference. The trial court must carefully instruct the jury regarding the inferences it may draw from such flight evidence. State v. Mann, 132 N.J. 410, 420 (1993). Furthermore,

while evidence of flight need not "unequivocally" support a reasonable inference of guilt, it must intrinsically reflect a consciousness of such guilt. State v. Randolph, 228 N.J. 566, 595 (2017).

Here, the State presented meager evidence supporting its theory that defendant's departure from the residence on October 28 demonstrated a consciousness of guilt to avoid his apprehension for the October 25 shooting. Notably, when asked by the trial court what evidence demonstrated that defendant's flight showed such a consciousness of guilt, the prosecutor candidly told the court, "I mean it's not much." The prosecutor stated the best evidence he had on this subject was Officer Vinzinski's testimony that he and defendant made eye contact on October 28 before defendant left the residence. Ibid. According to Officer Vinzinski's testimony, the officers, both dressed in plain clothes, waited in an unmarked vehicle outside the residence. They saw defendant leave the residence to dispose of trash, and Officer Vinzinski alleged they made eye contact at that time. Defendant then reentered the residence, came out shortly thereafter, walked past the unmarked vehicle, got into a silver car, and drove away.

As we have already noted, the officers did not attempt to communicate with defendant or follow him. They remained at the residence after he drove

away. There is no concrete direct evidence presented that defendant was aware that there were undercover police officers outside the residence, or that he left the location in an attempt to evade them.

The Supreme Court has noted that flight from the scene of a crime may be evidence of consciousness of guilt if the flight relates to the crime charged. Randolph, 228 N.J. at 594. Although it may be difficult for a jury to determine a defendant's actual motive for departure, the jury "must be able to draw reasonable inferences from the evidence; it may not be left to speculate." Id. at 595.

In the present case, the inference that defendant's departure from the residence on October 28 showed a consciousness of guilt of the shooting was speculative. The event took place three days after the shooting. There was no in-court or out-of-court identification of defendant as the perpetrator. The State acknowledged the video footage of the crime scene is not clear enough to identify the perpetrator's face, but rather, only allows a viewer to "see a couple of people, and a couple of vehicles[.]" The State's witness Flem, who had supposedly interacted with the defendant at the auto glass shop, did not identify defendant. Forensic analysis was not able to match defendant's DNA with the DNA on the shirt the State alleged he was wearing during the shooting.

In sum, there is simply insufficient evidence linking the defendant's departure from the residence on October 28 to the shooting on October 25. The fact that the officers' unmarked car partially blocked the driveway does not necessarily mean that defendant recognized it was a police car, or that he was leaving because he had shot at someone a few days earlier.

The State argues that a flight instruction is appropriate when there are both plausible and sinister explanations for a defendant's flight, citing State v. Wilson, 57 N.J. 39, 48-49 (1970). In Wilson, the circumstances of the alleged flight were very different from those of the present case. The defendant in Wilson entered a liquor store to commit a robbery, shooting and killing two people in the process. Id. at 43. After being struck with a bottle and seeing that his partner had left, the defendant ran from the store. Ibid. The Court ruled in Wilson that the flight charge was appropriate: "Although the jury could have inferred that [the defendant] left the store because he was threatened with a broken bottle, it could also readily infer that he fled to avoid apprehension by the police and thereby exhibited consciousness of guilt." Id. at 49.

In contrast with the defendant in Wilson, who fled after robbing a store and killing two people, there are far more benign explanations for why defendant in the present case left the residence on October 28 without acknowledging the

11

plainclothes officers who were parked in an unmarked vehicle in the driveway. Significantly, the identity of the defendant as the perpetrator was certain in Wilson, while that is not so here.

The trial court's decision in this case to issue the flight charge was based in part on the length of time the undercover officers were parked outside the residence, and the fact that a person would need to walk by the unmarked vehicle in order to get through the driveway. This led the trial judge to determine that "it took effort for [defendant] to leave" and "[t]he person leaving is going to have to deal with whoever is there." From this, the court concluded that the evidence sufficed for a reasonable jury to infer flight and a consciousness of guilt from the circumstances. We respectfully disagree. Although the evidence presented was somewhat supportive of a flight theory, it did not rise to a level that warranted the court's instruction that the proof could be used by the jury to support such an incriminatory inference.

The issuance of the flight charge in this case was not harmless error. The Supreme Court has repeatedly held that erroneous instructions in criminal cases are typically "poor candidates" for rehabilitation under the harmless error doctrine. Loftin, 146 N.J. at 412 (1996); see also State v. Simon, 79 N.J. 191,

206 (1979).  Erroneous jury instructions on material points are generally presumed to be reversible error.  Martin, 119 N.J. at 15.

In State v. McNeil, 303 N.J. Super. 266, 275 (App. Div. 1997), we determined that the flight charge given in that case was "totally inapplicable to the evidence" where a perpetrator's act of leaving the scene of the crime was presented as evidence of consciousness of guilt.  The question for the jury in McNeil, as here, was whether the defendant was, in fact, the perpetrator.  Ibid. We found that the inappropriate jury charge in McNeil, in combination with other erroneous charges, was clearly capable of producing an unjust result under Rule 2:10-2, and therefore was not harmless error.  Id. at 269.  Similar reasoning applies here.

Another reason the flight charge here was erroneous and prejudicial was because it misstated – no doubt inadvertently – the location from which defendant's alleged flight[3] occurred.  The relevant portion of the charge the court gave reads as follows:

> There has been some testimony in this case from which you may infer that the defendant fled shortly after the alleged commission of the crime.  The

---

[3] The phrase "the place from where the crime has been committed" appears verbatim in the Model Charge, and was not omitted or modified to fit the circumstances here.  See Model Jury Charges (Criminal), "Flight" (approved May 10, 2010).

defendant denies any flight. The question of whether the defendant fled after the commission of the crime is another question of fact for your determination.

However, <u>mere departure from the place where the crime has been committed</u> does not constitute flight. If the [sic] you find the defendant[,] fearing that an accusation or arrest would be made against him on the charge involved in the Indictment[,] took refuge in flight for the purposes of evading the accusation or arrest on that charge, then you may consider such flight in connection with all other evidence in this case as an indication or proof of consciousness of guilt.

[(Emphasis added).]

Defendant rightly points out that "there is no way to know whether the jury wrongly understood that the [c]ourt was instructing that the hurried departure of the van from the scene of the crime was the flight conduct referred to in the charge." The flight charge did not explain that the alleged flight in question occurred three days after the crime took place, rather than directly from the scene of the crime. This unfortunate phraseology increased the potential to confuse the jury.

We recognize that defense counsel did not call this particular misstatement to the judge's attention, and that the prosecutor in summation did not argue defendant had fled from police officers at the scene of the shooting.

Nonetheless, the misstatement within the instruction adds to our concern that the jurors could have been misled.

In sum, the flight charge in this case was not adequately supported by the evidence and was phrased in a manner that incorrectly suggested defendant fled police at the shooting scene. These errors require a new trial, given that the State's proofs of guilt were not insurmountable. Cf. State v. Sterling, 215 N.J. 65, 102 (2013) (finding no harmful trial error requiring reversal of certain charges where DNA evidence had overwhelmingly proved the defendant's identity and guilt).

## B.

The second contested issue on appeal is whether the court should have given an identification instruction to the jury. Defense counsel did not request such an identification charge, but argues that the court should have sua sponte issued this instruction. We review this issue, not raised below, under a plain error standard of review. Macon, 57 N.J. at 333.

The model "No In- Or Out-Of-Court Identification" charge reads as follows:

> (Defendant), as part of his/her general denial of guilt, contends that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that he/she is the person who

committed the alleged offense. The burden of proving the identity of the person who committed the crime is upon the State. For you to find this defendant guilty, the State must prove beyond a reasonable doubt that this defendant is the person who committed the crime. The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else, or to prove the identity of that other person. You must determine, therefore, not only whether the State has proven each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proven beyond a reasonable doubt that this defendant is the person who committed it.

[Model Jury Charges (Criminal), "No In- Or Out-Of-Court Identification" (rev. Oct. 26, 2015).]

Defendant argues that, without this instruction, the jury may not have been sufficiently cognizant of the State's burden to prove beyond a reasonable doubt not only that an offense occurred, but that it was this particular defendant who committed it.

Because there was no in-court or out-of-court identification of defendant as the perpetrator, and defendant maintains that he did not commit the crime, identity was a hotly disputed issue in this case. Given the exculpatory testimony from defendant's mother and ex-girlfriend, it is at least plausible that the defendant's brother, Robert Harold, was the perpetrator. As we already have noted, defendant's mother testified that Robert borrowed the gold van, which was linked to the shooting, on October 25, and returned it to her with a broken

16

windshield the next day, October 26. It is also noteworthy that the DNA analysis of the shirt the defendant was supposedly wearing during the shooting was not conclusive, and that his ex-girlfriend testified, "he wouldn't be caught dead in that [shirt]." Flem, the auto glass repair clerk, was unable to identify defendant as his customer. All things considered, the identification charge would have been appropriate in this setting.

Trial courts have an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party." State v. Reddish, 181 N.J. 553, 613 (2004) (citing State v. Thompson, 59 N.J. 396, 411 (1971)). At times, a trial court's failure to sua sponte charge the jury on a particular issue may constitute plain error requiring reversal. State v. Fair, 45 N.J. 77, 93 (1965). Although this omission by itself would not necessitate a new trial, the error compounds the prejudice stemming from the erroneous flight charge. A new trial in this close case, in which the circumstantial proofs of identity were not as "overwhelming" as in other cases, is in the interests of justice. R. 2:10-1.[4]

---

[4] Because the jury charge errors could have tainted defendant's conviction on the weapons possession count, that count should be tried again as well.

Reversed and remanded for a new trial.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2315-16T4