THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GUILFORD C. YOUNG, PLAINTIFF IN ERROR.

Argued March 7, 1922—Decided June 19, 1922.

1. The defendant was suspected of being guilty of the crime of murder, and made certain statements to police officers relating to his whereabouts and conduct about the time of the murder, protesting his innocence. An investigation made by the officers showed that some of his explanations were untrue, and one or more of them told the defendant it would be better if he told the truth. He did not follow that advice but insisted that his statements were true, and when he was shown that he was not telling the truth said he wished to make a confession to the prosecutor of the pleas, but before doing so he was very plainly told by that officer that his statements must be voluntary and not based on any hope of assistance from him, and thereupon he made a confession. The trial court adjudged that the confession was voluntary, and allowed it to be offered in evidence. *Held*, that the court was justified in finding that the confession was voluntary and its admission in evidence not error.

2. While the defendant was confined in the county jail he attempted to induce a person, visiting another prisoner, to bring him a saw and other implements useful in affecting an escape. *Held*, that the admission of this evidence was competent on the question of conscious guilt, its weight being for the jury to determine.

3. A witness confined in the jail with the defendant wrote a letter for him which he hoped to send to his wife. The witness was allowed to use the letter for the purpose of refreshing his recollection as to its contents, to which objection was made. *Held*, that it was not error to permit the witness to read the letter for the purpose of refreshing his recollection, subject to being cross-examined as to the extent of his recollection of the matters contained in the writing.

4. The defendant also objected to the testimony concerning the letter because he claimed it to be a confidential communication from husband to wife, and, therefore, privileged. *Held*, that the communication to the witness was not privileged under a statute providing: "Nor shall any husband or wife be compellable to disclose any confidential communications made by one to the other during marriage," and that to establish a privilege, based on the marital relation, the communication must be confidential and made by one to the other during marriage, and that to commit the communication to a third person to be transmitted to the wife, whether orally or in writing, destroys the element of confidence, which in law is the basis of the privilege, nor was it a communication made by a husband to his wife, which is protected by the statute.

5. The defendant was permitted to testify on his own behalf to facts tending to show his state of mind at the shooting in great detail, and when his counsel undertook by further questions to have him testify to practically the same thing, objection was made and the court overruled all questions which had a tendency .to allow the witness to repeat what he had already testified to. *Held*, that this was not error.

6. The defence set up by the defendant was self-defence, and to sustain it evidence was offered to prove that the defendant had consulted several lawyers about the conduct of the deceased with his wife. *Held*, that this was properly overruled because irrelevant, defendant not claiming that he had killed deceased because of any state of mind created by the conduct of his wife, but because when he expostulated with the deceased concerning it, he had reason to believe that the deceased was about to do him a serious bodily injury, and that he shot deceased in self-defence. His conversations with the lawyers about the conduct of his wife and the deceased had no relation to the conduct of the deceased at the time he was shot, nor as a justification of the defendant's conduct.

7. The trial court refused to allow the defendant to testify that he believed deceased was armed. No objection was made to this ruling, but if there had been, the evidence would not have been competent, for his belief must be based upon some fact, and all the acts of the deceased defendant testified to was that deceased put his hand near his pocket as though to draw a revolver, and whether that justified the inference by defendant that deceased was armed was a jury question. To make his belief competent there must be some evidence tending to show that his belief was a reasonable one.

8. The defendant cannot justly complain of the charge of the court to the jury to the extent of refreshing their recollection as to the facts, if correctly stated. Every comment on evidence by the court has that effect, and comment on evidence is not error where the jury is instructed to rely on their own recollection, as was done by the trial court.

On appeal, from the Supreme Court.

For the defendant in error, *Charles A. Wolverton* and *Albert E. Burling.*

For the plaintiff in error, *John T. Cleary.*

The opinion of the court was delivered by

BERGEN, J.   The defendant was convicted of murder of the first degree and has brought the record here on specifica-

tions of causes for reversal under the one hundred and thirty-sixth section of the Criminal Procedure act, no assignments of error having been filed.

The first specification argued is that the verdict is against the weight of the evidence, as permitted by statute. *Pamph. L.* 1921, *p.* 951. The testimony shows that defendant left Camden with deceased in an automobile belonging to and driven by the latter; that a few miles from the city the lifeless body of deceased was found, partially secreted from casual observation; that defendant was found in possession of the automobile and of articles taken from the body of the deceased; that the number of the engine of the automobile had been changed by order of the defendant and a fraudulent bill of sale obtained and exhibited by him to show his ownership. The defendant admitted that he had killed deceased, but testified it was done in self-defence. The verdict is not against the weight of the evidence, for the conduct of the defendant was shown, by the weight of the evidence, beyond a reasonable doubt, not to justify a killing in self-defence, but the inference that the object of the killing was robbery.

The next point is that defendant's confession, admitted in evidence, was not voluntary, but was induced by a statement, made to defendant by Doran, a policeman, and other officers investigating the truth of defendant's explanatory statements, that it would be better for him to tell the truth. This was said to defendant while the officers were investigating the truth of certain statements made by defendant which tended to show that he had not stolen the automobile, and also that he had done other things inconsistent with his guilt, which, being investigated, proved to be untrue, and it was with reference to such statements that the officers told defendant it would be better to tell the truth in his alleged exonerating statements. He was not advised to confess guilt, but to tell the truth in his explanatory statements, which were found to be not true, and which defendant afterwards admitted were false. It appears from defendant's testimony that what Doran told him about telling the truth did not influence him, for he persisted in his claim of innocence and tried to support

it by other false statements, until it was shown to him that they were false, when he made the confession admitted in evidence. The testimony is abundant that before he made the admissions complained of he was distinctly and repeatedly told by the prosecutor that no promises would be made, and that whatever he said must be voluntary, with the expectation it would be used against him, and the evidence on this point justified the trial court in finding that the confession was voluntary, and therefore defendant, by its admission in evidence, did not "suffer manifest wrong or injury" within section 136 of the Criminal Procedure act.

The next point argued is admission of testimony showing that defendant attempted to procure means of escape from the county jail by requesting another person, visiting a prisoner in the jail where defendant was confined, to bring him a saw and other implements useful to carry out that purpose. The evidence was competent. The argument by defendant to the contrary only goes to its weight on the question of conscious guilt, and that was for the jury. An attempt to procure tools for the purpose of escaping from prison would perhaps be more persuasive of conscious guilt than flight before arrest; but either act is competent on the question of guilt, although of little value in determining the grade of the offence.

It is next urged that it was error to permit the witness Randall to use, for the purpose of refreshing his recollection of what defendant said to him, a letter written by the witness to the wife of the defendant, under defendant's direction and by his dictation. The facts shown were that at defendant's request Randall wrote the letter and was allowed to read it for the purpose of refreshing his recollection. It being read, the witness testified that it was what he had written and that he had written what defendant dictated to him to write. The fact that the writing corresponds with the testimony of the witness as to his refreshed recollection does not make it incompetent; the question is whether the witness adopts the words as his recollection, and, as was done in this case, he may be cross-examined as to the extent of his recollection.

The witness testified that he wrote just what he was told to write by the defendant, and its effect and credibility was for the jury. There was no error in this. *Myers* v. *Wegner,* 62 *N. J. L.* 432. But the defendant further objects to the testimony because he claims it to be a confidential communication from husband to wife, and therefore privileged. The answer to this is that it was not communicated to the wife, but to a third person, to be by him put in writing at the request of the defendant. Our statute provides, section 5 of "An act concerning evidence" (*Comp. Stat., p.* 2222) : "Nor shall any husband or wife be compellable to disclose any confidential communication made by one to the other during marriage," and under it, to establish a privilege, based on the marital relation, the communication must be confidential and made by one to the other during marriage. To commit the communication to a third person to be transmitted to the wife, whether orally or in writing, destroys the element of confidence; nor is it a communication made by the husband to the wife. The communication to a third party under such circumstances amounts to a waiver by the husband of marital confidence such as the statute contemplates. The privilege is personal to husband and wife. "A third person who happened to overhear a personal conversation between husband and wife may be examined as to such conversation. A letter, also written confidentially by a husband to a wife, is admissible against the husband when brought into court by a third party." *Whart. Cr. Ev.,* § 398; *Commonwealth* v. *Wakelin* (*Mass.*), 120 *N. E. Rep.* 209. The instant case is much stronger, for here the husband entrusted the communication to the witness to be reduced to writing, and no such privilege as is invoked exists. 28 *R. C. L.* 527, § 116.

The defendant also argues that the court improperly excluded evidence tending to show the state of mind of defendant at the time of the shooting. Granting that a defendant in a criminal case may testify to his state of mind, as a distinct proposition, without basis of fact from which a state of mind may be inferred, which is not conceded, it does not follow that the exclusion of the evidence was error. The

argument is rested upon different propositions. First, that before the alleged crime he had consulted different lawyers about the conduct of deceased with his wife as indicating his state of mind as to the necessity of killing deceased, when he did, in self-defence, which he asserted was his justification for taking the life of deceased. The proposed testimony was entirely irrelevant, for defendant does not claim that he acted because of any state of mind created by the conduct of his wife and deceased, but because when he expostulated with deceased concerning it he had reason to believe deceased was about to do him a serious bodily injury, and that he shot him to prevent the act of the deceased. It was not claimed that defendant's mind was affected by what had previously happened and he had a right to kill defendant to save himself, if the facts warranted him in apprehending serious bodily injury, without regard to his state of mind caused by his feeling that the deceased and defendant's wife had been unduly intimate. Second, that defendant was not allowed to testify to his state of mind when he killed his victim. This is not true, for he testified very fully as to his state of mind and was allowed more latitude by the court than he was entitled to, and recited all the thoughts which he said "ran through his mind," in great detail. He had testified that he was intoxicated; that he wished to talk with deceased about caring for his wife and children, as he was going to leave for some place in the west, and that he was in a confused state of mind caused by the relations between deceased and his wife, and then his counsel endeavored to take him over the same ground by additional questions, which the court refused as useless repetitions, and this ruling is the ground now relied on as error. A reading of the record shows that defendant suffered no manifest wrong or injury. On the contrary, the court was very patient and afforded defendant an opportunity to prove his state of mind in his own words, and to give in detail what his mental intentions were, and only interfered when the evidence sought was mere repetition of his previous testimony. As Chief Justice Beasley said in *Schlemmer* v. *State,* 51 *N. J. L.* 23 (at *p.* 28), "As a state

of mind is inscrutable to the direct perception of the senses resort must, of necessity, be had, when it is in question, to its manifestations as exhibited in words and acts," and therefore when the defendant was permitted to testify to the thoughts running through his mind, not evidenced by words or acts, he was accorded a right more favorable than he was entitled to, and a denial of its repetition was no error.

The next point made is refusal by the court to allow defendant to testify that he believed deceased was armed. No objection was made to this ruling, but if there had been it would not have been competent, for his belief must be based on some fact, and all the acts of deceased he testified to was the action of deceased in putting his hand near his pocket, as though to draw a pistol, and whether that justified the inference by defendant that deceased was armed was a jury question.

It is also urged by defendant that the charge of the court refreshed the minds of the jury relating to the facts. It is not said they were untruly stated, but that their recital refreshed the minds of the jury. Every comment on evidence by the court has that effect, and it is not error when, as here, the jury is instructed to rely on their own recollection. We have examined the other specifications of causes argued and find no merit in them.

There being no error shown in this record the judgment under review will be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 14.

*For reversal* — None.