293 N.J. Super. 113 (1996)
679 A.2d 725
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CALVIN EDMONDS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 21, 1996.
Decided August 1, 1996.
*114 Before Judges DREIER, ARNOLD M. STEIN and KESTIN.
Susan L. Reisner, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, of counsel and on the brief).
Clifford J. Minor, Essex County Prosecutor, attorney for respondent (Robert L. Cerefice, Assistant Prosecutor, of counsel and on the brief).
ARNOLD M. STEIN, J.A.D.
Defendant was found guilty of first degree armed robbery. His codefendant, Charles White, was found guilty of second degree robbery, obviously as defendant's accomplice. We reverse because the identification charge given the jury was so insufficient that it deprived defendant of a fair trial.
On September 23, 1993, at about 2:00 p.m., sixteen-year-old K.C. had a gold chain torn from her neck. She gave the following account of the robbery to police:
I was coming home from school this afternoon in the area of 132 Rhode Island Avenue, when I was approached by two black males. One was dressed in a gray or blue outfit and he had no beard.
The other had a red shirt, black pants, and a beard. The one in gray was on the opposite side of the street, and the one with the beard was diagonally across the street toward me, when he approached me head on he said, "Don't move," then he said, "Give me your chain."
The one with the beard pointed something at my chest. It was not a finger, it was hard. Then he snatched my chain and the two of them ran away laughing.
*115 After unsuccessfully chasing the men, K.C. ran into a store and called the police. Officer Michael Pyszko arrived within minutes. Pyszko and the victim drove around nearby streets until about 3:00 p.m., when she spotted two individuals whom she said had stolen her chain. She made the identification from the police car at some distance from the men. According to Pyszko, White was wearing a "red T-shirt, black pants, [and] some sort of cloth type footwear." Defendant was wearing a "light sweatshirt, long sleeves, and light pants with black sneakers," and "had a beard, no hat." K.C. identified White as the individual who actually snatched the chain. Both men were sitting on White's porch smoking cigarettes. Neither of them had a gold chain in his possession. Defendant had a pair of pliers and a box cutter in his back pocket.
With one clarification, K.C. gave virtually the same description at trial that she had given to Officer Pyszko.
The one who came to me had on a red T-shirt and black sweat pants and a black baseball hat, and the other one across the street had on light-colored blue jeans and a light shirt, I can either guess it was light blue or gray.
She testified:
[T]he one that came up to me, he had a beard, it looked like a couple days' growth, as if he didn't shave.
It wasn't a heavy beard.
Q Okay. So the individual came up to you, it's fair to say was unshaven?
A Yes.
However, K.C.'s trial identifications were completely different to those she gave Officer Pyszko at the arrest scene. This time she identified defendant as her assailant and the codefendant, White, as the person who was standing across the street:
Q Was there any doubt in your mind on September 23 that the individuals you identified were the ones who took your chain?
A There was no doubt in my mind.
Q [K.C.], do you see these two individuals here today?
A Yes, I do.
Q Can you point them out and identify them for the record by the clothing they are wearing today?

*116 A They are right there, the one with the light brown jacket and the other one with the glasses and the gray sweater.
THE COURT: Indicating Mr. Edmonds and Mr. White for the record.
[THE PROSECUTOR]: Thank you, your Honor.
Q [K.C.], which of these two individuals is the one who actually crossed the street and took your chain?
A The one with the light brown jacket.
THE COURT: For the record, Mr. Edmonds.
[THE PROSECUTOR]: Thank you again, your Honor.
Q The other individual who you identified, he was the one who was across the street?
A Yes, he was across the street.
White testified that he was sleeping until about 2:15 or 2:30 p.m. His sister then asked him if he wanted to watch television. As he was about to sit down in front of the television set, the doorbell rang. Defendant, who was at the door, asked White for a cigarette. White got two cigarettes and went out on the porch, where he and defendant sat for about three to five minutes before the police arrived. White was wearing a red T-shirt, black thin sweatpants and slippers. He had shaved the day before and did not appear unshaven. According to White, defendant was wearing a light-colored T-shirt and blue jeans and he was "[d]irty like you were working up under a car. The grease coming out of the oil pan on you. He was greasy.... Yes, it was all over him." White's sister corroborated her brother's testimony.
Defendant testified that at 2:00 p.m. he was working on his sister's car in the back yard of his house across the street from where White lived. He had been working on the car since about 10:00 a.m. Defendant described the work: "I had to tighten up her transmission line, check the brakes, and I was looking for an oil leak on the car, the switch was bad on the car." He had worked on the car on and off during the early part of the day, stopping to feed breakfast and lunch to his son, whom he was taking care of that day. At about 2:10 to 2:15 p.m., defendant went across the street and asked White for a cigarette. The two sat on the porch between four and eight minutes when Officer Pyszko arrived. While he was sitting on the porch, he was *117 watching his four-year-old son who was on the porch across the street. Defendant claimed that the pliers and the box cutter that were removed from his back pocket were dirty. On rebuttal, Office Pyszko testified that they were clean.
Defendant's sister testified that she had left the car with him that day so that he could repair transmission and brake fluid leaks, and that his clothes were dirty and greasy when she picked him up at the police station.
For his identification charge, the trial judge gave the jury a truncated version of the unnumbered identification instruction in our Model Criminal Jury Charges, dated November 26, 1990. He instructed the jury:
As to identification, where the identity of the person who committed the crime is in issue, again, the burden of proving that identity is upon the State.
The State must prove beyond a reasonable doubt that a particular defendant is the person who committed the crime.
The defendant has neither the burden nor the duty to show that the crime if committed was committed by someone else, or to prove the identity of that other person.
You must determine, therefore, not only whether the State has proven each and every essential element of the offense charged beyond a reasonable doubt, the presence of the defendant beyond a reasonable doubt, but also, whether the State has proved beyond a reasonable doubt that this defendant is the person who committed it.
In order to meet its burden with respect to the identification, the State has presented the testimony of the victim, [K.C.].
You will recall [K.C.] identified the defendants in the court as the persons who committed the offense.
According to [K.C.]. her identification of the defendants in court was based upon the observations and perceptions she made of the defendants on the scene at the time the offense was being committed.
It is your function as jurors to determine what weight, if any, to give to this testimony.
You must decide whether there is sufficiently reliable evidence upon which to conclude that these defendants are the persons who committed the offenses charged.
Consider the capacity or the ability of the witness to make observations or perceptions and consider the opportunity which [K.C.] had at the time and under all the circumstances for seeing that which she says she saw.

*118 If, after a consideration of all the evidence, you have a reasonable doubt as to the identity of the defendant as the person present at the time and place of the crime you must acquit the defendant.
If, however, after a consideration of all the evidence you are convinced beyond a reasonable doubt of his presence at the scene and his identity, you will then consider whether the State has proven each and every element of the offense charged beyond a reasonable doubt.
This instruction was totally insufficient in this case where the identity of the assailant was a crucial issue. The victim's in-court and out-of-court identifications were glaringly inconsistent: at the scene of the arrest, K.C. identified White as the person who ripped the chain from her, but at trial, she identified defendant as her assailant. The in-court identifications were further cast into doubt because White was wearing clothes similar to those worn by the assailant, and because of defendant's unkempt, dirty appearance. Both defendants' calm demeanor so soon after the assault also weakened the State's case. Under these circumstances, it was necessary "to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988). Here, the instruction was especially misleading because it referred to K.C.'s in-court identification without making any reference to her inconsistent out-of-court identification and without referring to her testimony as to which defendant did what. The instruction omitted these and other factors which should have been assessed by the jury in evaluating guilt beyond reasonable doubt.
The absence of any eyewitness other than [K.C.] directly connecting defendant to the crime, the discrepancies in the description, and defendant's denial combined to make identification a fundamental and essential trial issue. The potential danger of mistaken eyewitness identification is particularly significant.
[State v. Green, 86 N.J. 281, 291, 430 A.2d 914 (1981).]
The vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: "What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent  not due to the brutalities of ancient criminal procedure."

*119 [State v. Gunter, 231 N.J. Super. 34, 44-45, 554 A.2d 1356 (App.Div.), certif. denied, 117 N.J. 80, 81, 563 A.2d 841 (1989) (quoting United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149, 1158 (1967)).]
Defendant's contention that he was entitled to an instruction on a lesser included offense of third degree theft is clearly without merit. R. 2:11-3(e)(2).
Reversed and remanded for a new trial.