754 A.2d 1153

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. EDWARD ROBINSON, DEFENDANT–APPELLANT.

Argued May 2, 2000—Decided July 24, 2000.

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney).

*Michelle Katich,* Assistant Prosecutor, argued the cause for respondent (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*H. John Witman, III,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*John J. Farmer, Jr.,* Attorney General, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

In this criminal appeal, we consider whether the jury instructions on identification should have been "tailored" or "molded" to the unique facts of the case. Defendant was convicted of armed robbery largely on the basis of eyewitness testimony. In essence, defendant argues that the trial court committed plain error because it did not comment on the perceived weaknesses in the State's evidence. We conclude that the trial court did not err in its charge to the jury. Therefore, we affirm defendant's conviction.

I.

On February 19, 1996, Morningstar Santana, along with her friends, Crystal Matos and Ruth Acosta, and Santana's boyfriend, George Power, were in Santana's Paterson apartment in the Alabama housing complex. Santana's eleven-year-old son Jason and his friend also were present. The adults were in the living room while the children were in a back bedroom.

Sometime around 11:30 p.m., someone knocked on the door. Matos opened the door, and a man entered, brandishing a gun,

and announcing, "this is a [expletive] holdup." The man was wearing a ski hat that covered the top of his head to his eyebrows, but revealed his face. Santana recognized the perpetrator as someone she knew from the housing complex. Although she did not know his last name, Santana knew his first name as "Eddie." She claimed to have seen him for six or seven years in or around the complex. Acosta, who also lived at the complex, did not recognize the perpetrator; she did not believe that he lived in the area. Power likewise said that he had not seen the person before that day.

After forcing the adults to kneel with their hands behind their heads, the perpetrator went through everyone's pockets, taking what money he found. At one point, the perpetrator told Power to lie down on the floor, grabbing and throwing him down when he misunderstood the command. Dissatisfied with the money he had obtained, the perpetrator began to yell, "this isn't it, this isn't it." He kept telling the group that he knew there was more money present. After Santana's son Jason momentarily entered the room, Santana became fearful and told the perpetrator that there was money in a back bedroom.

The perpetrator entered the bedroom, keeping his firearm pointed at Power's head, and threatening that Power would "get it" if anyone "tried anything." Once in the bedroom, Power told the perpetrator that there was money in the dresser drawer. The perpetrator took several hundred dollars, saying, "this is what I'm talking about." The perpetrator then hit Santana in the back because she kept staring at him, but she continued to stare at him nonetheless. Similarly, at one point the perpetrator became impatient with Matos, striking her in the head with his weapon. The perpetrator forced the victims to lower their pants to slow their pursuit. Acosta was spared that embarrassment because according to the perpetrator, she reminded him of his mother. After taking more valuables, the perpetrator eventually yanked the receiver from the bedroom telephone and fled.

The police were called from a second phone in the apartment. Within a short time, the police arrived and Santana informed them that they had just been robbed by "Eddie West." Santana would later testify that a woman in the complex who had seen a man running from the building had told Santana that the man's name was "West."

The day after the robbery, Corey Armstead, a neighbor and an acquaintance of defendant, told Santana that the perpetrator's name was "Gregory Marshall," but that he was known also as "Durrell." (We do not know why Armstead gave those names.) That same day, Santana went to the police station and looked through photo books to no avail. The record does not reveal whether defendant's photo was in the books shown to Santana. Santana also was shown a picture of Gregory Marshall, the person whose name was supplied by Armstead. Santana said the picture of Marshall was not that of the man who had robbed her.

About two months later, the police considered defendant a suspect in this robbery after he was implicated in and arrested for a homicide occurring during the course of a similar robbery. On April 20, 1996, detectives asked Santana to report to police headquarters. While there, Santana gave a statement and was shown a photographic lineup of five men. Santana identified defendant as the perpetrator who had robbed her and her guests.

Shortly thereafter, Power and Acosta also were asked to report to police headquarters. Separately, detectives showed Power and Acosta photo arrays and each identified defendant as the perpetrator. Neither Power nor Acosta hesitated in making the identification. Acosta would later acknowledge that Santana and Power had told her that they had identified someone as the perpetrator and that she (Acosta) should go to police headquarters to "sign the picture."

The Passaic County Grand Jury returned an indictment charging defendant with four counts of first-degree robbery, second-degree possession of a weapon for an unlawful purpose, third-degree unlawful possession of a weapon, and second-degree pos-

session of a weapon by a previously-convicted person. Defendant pled not guilty on September 3, 1996.

Defendant was tried before a jury on May 13–15, 1998. Santana, Acosta, and Power all testified, relaying their accounts of the robbery and their identification of defendant's photograph at the police station. They also identified defendant at trial as the man who had robbed them. Matos was not located by the investigating detectives, nor did she testify at trial.

Defendant testified on his own behalf. He stated that he had lived at the Alabama housing complex in 1989, but not at the time of the robbery. He testified further that in February 1996, he had spent two days in Paterson while traveling from North Carolina to purchase drugs in New York. However, defendant claimed he did not go to the Alabama housing complex at that time. He denied knowing or ever having met any of the victims, except for Santana, whom he possibly met when he was selling drugs. When asked at trial if he had robbed Santana and her guests, defendant replied: "No. It's impossible, impossible."

Defense counsel and the prosecutor devoted a significant portion of their respective closing arguments to the identification question. In particular, defense counsel stressed that Santana had provided different names for the perpetrator, and that reasonable doubt arose because the victims' identifications of defendant were subject to error. The prosecutor rebutted those suggestions by arguing that providing different names for the perpetrator was not the same as making inconsistent identifications, that the victims had ample opportunity to view the perpetrator during the commission of the crimes, and that the multiple identifications of defendant amounted to proof of his guilt beyond a reasonable doubt.

At the charge conference, the trial court noted, "[i]dentification, obviously that's the issue." Before providing the specific charge on identification, the court instructed the jury as follows:

> Ladies and Gentlemen, in the trial of this case, as in all cases, as you already know, the Court and the jury have separate and distinct functions to perform....

[Y]ou, the jury, are the sole and exclusive judges of the facts, the weight of the evidence, the credibility of the witnesses, the inferences to be drawn from the evidence and all issues and questions of fact whatever including the ultimate conclusion of guilty or not guilty.

. . . .

The power to pass upon and decide the facts is reserved for you and you alone. The Court has the right to discuss the evidence if it chooses to do so. However, any discussion of the evidence only represents my recollection of the facts and if what I say about the evidence does not coincide with your recollection, you must disregard my statement as to what the evidence was and rely solely upon your own recollection. At this point I advise you that I intend to make little or no comment in connection with the testimony and evidence.

After giving instructions relating to the burdens of proof and the elements of the charges contained in the indictment, the court gave the jury the following charge on identification:

This defendant as part of his general denial of guilt contends that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that he is the person who committed the alleged offense or offenses.

Where the identity of the person who committed the crime or crimes is in issue, the burden of proving that identity is upon the State. The State must prove beyond a reasonable doubt that this defendant is the person who committed the crime or crimes. The defendant has neither the burden nor the duty to show that the crime or crimes, if committed, were committed by someone else or to prove the identity of that other person. You must determine, therefore, not only whether the State has proven each and every element of the offense or offenses charged beyond a reasonable doubt, but also whether the State has proved beyond a reasonable doubt that this defendant is the person who committed the offense or offenses.

In order to meet its burden with respect to the identification of the individual who committed the offenses the State has presented the testimony of several witnesses. You'll recall they included Miss Santana, Mr. Power and Miss Acosta. And you will recall that those three individuals testified in this courtroom and identified the defendant in this court as the person who committed the offense or offenses.

According to the witnesses, their identification of the defendant in court is based upon the observations and perceptions which they made of the defendant on the scene at the time the offense or offenses were being committed.

It is your function as jurors to determine what weight, if any, to give to this testimony. You must decide whether it is sufficiently reliable evidence upon which to conclude that this defendant is the person who committed the offenses charged.

In going about your task you should consider the testimony of the witness or witnesses in the light of the customary criteria concerning credibility as I have explained it to you. It is particularly appropriate that you consider the capacity or the ability of the witness to make observations or perceptions as you gauge it to be and that you consider the opportunity which the witness had at the time and under all of the attendant circumstances for seeing that which he or she says she saw and

that which he or she says she perceived with regard to the identification of the person who committed the alleged offenses. And unless the in-court identification results from the observations or perceptions of the defendant by the witness or witnesses during the commission of the crime or crimes rather than being the product of an impression gained at the out-of-court identification procedure, it should be afforded no weight. Thus, the ultimate issue—I'm sorry—thus, the ultimate issue of the trustworthiness of an in-court identification is for you to decide.

If after a consideration of all of the evidence you have a reasonable doubt as to the identity of the defendant as the person present at the time and place of the crime, you must find him not guilty. If, however, after a consideration of all of the evidence you are convinced beyond a reasonable doubt of the defendant's presence at the scene, you will then consider whether the State has proven each and every element of the offense or offenses charged against him beyond a reasonable doubt.

The first order of business, therefore, when you commence with your deliberations should be the issue of identification. If you are convinced beyond a reasonable doubt that the State has established the presence of the defendant at the scene, then you should go on to consider the six counts contained in the indictment. If you are not convinced that the State has established the presence of the defendant at the scene beyond a reasonable doubt, then you should end your deliberations because obviously without the proof you're not satisfied that he was the individual who was present, then it would be meaningless to consider the various offenses charged.

But, as I point out, if you are convinced beyond a reasonable doubt that the identification of this defendant has been established in terms of his presence at the scene, then you would go on to consider the six different offenses contained in the indictment.

Following that charge on identification, the court further instructed the jury:

It is your task to determine the guilt or innocence of this defendant from all of the evidence. You've heard the State's case and the case for the defendant and you are aware of the conflicts in the testimony. . . .

In weighing the testimony and credibility to be given to a witness you should consider the attitude and demeanor of the witness on the stand, the impression that witness made upon you in giving his or her testimony, their ability to make observations and to relate them, the interest that the witness may have in the outcome of the case and in general any other factor which in your judgment bears upon the truth of what occurred on that occasion.

Defendant did not object to any portion of the charge, nor did he request any additional charge on identification.

After brief deliberations, the jury returned a verdict of guilty on all counts. Pursuant to *State v. Ragland,* 105 *N.J.* 189, 193–95, 519 *A.*2d 1361 (1986), the count of possession of a weapon by a

previously-convicted person was tried separately to the same jury after it returned the verdict on the other counts. The trial court sentenced defendant to an aggregate term of life imprisonment plus ten years, with thirty years of parole ineligibility.

Defendant appealed to the Appellate Division, which affirmed his conviction and sentence in an unreported decision. We granted defendant's petition for certification solely in respect of whether the trial court should have used fact-specific jury instructions regarding defendant's identification. 162 *N.J.* 662, 745 *A.*2d 1212 (1999). We also granted the Attorney General's motion to appear as *amicus curiae*. We now affirm.

## II.

### A.

■ Proper jury instructions are essential to ensuring a fair trial. *State v. Green,* 86 *N.J.* 281, 287, 430 *A.*2d 914 (1981). *Green* is this Court's seminal case holding that the trial court should instruct on identification when a defendant's identification is a fundamental or an essential issue in the case. *Id.* at 291–93, 430 *A.*2d 914. In *Green,* the defendant was convicted of rape, robbery, and possession of a razor while committing the rape and robbery. The convictions were based almost entirely on the victim's eyewitness identification. The corroborating evidence was that the defendant was the same astrological sign as the one stated by the assailant in the brief conversation that preceded the crimes, the defendant used a razor in his job, lived in the same neighborhood as the victim, and walked daily by the site where the crimes occurred. *Id.* at 286–87, 430 *A.*2d 914. The court refused defendant's request for a specific charge on identification.

We noted in *Green* that identification was a "key issue" in the case as underscored by the fact that the jury had requested a read-back of the victim's testimony in which she described the assailant. *Id.* at 287, 291, 430 *A.*2d 914. Significantly, the victim's original description of the assailant was of a man six inches

shorter and twenty-five to thirty-five pounds lighter than the defendant. *Id.* at 287, 430 *A.*2d 914. The victim also had failed to refer to a broken tooth of the assailant until some twelve months after the crimes. *Ibid.* Under those circumstances, we reversed the conviction on the basis of the trial court's refusal to instruct on identification. *Id.* at 294, 430 *A.*2d 914.

We made it clear in *Green* that when identification is a fundamental or an essential issue at trial, "the defendant ha[s] a right to expect that the appropriate guidelines w[ill] be given, focusing the jury's attention on how to analyze and consider the factual issues with regard to the trustworthiness" of in-court identifications. *Id.* at 292, 430 *A.*2d 914. To that end, we approved the use of the model charge on identification then in existence. The model charge we approved in *Green,* as revised in 1990, was essentially the charge given by the trial court in this case.

## B.

█ Defendant objects to the court's charge on the ground that the court did not refer to the perceived weaknesses in the State's case as argued by defense counsel in summation. Briefly stated, defendant asserts that the trial court's failure to set forth his factual contentions made the charge deficient under *Green.*

We disagree. *Green* indicates that a trial court *may* satisfy its obligation by "setting forth the respective factual contentions," *Green, supra,* 86 *N.J.* at 293, 430 *A.*2d 914, but that decision does not require the court to proceed in that manner. We noted in *Green* that the trial court "also could have used as a guide the Model Jury Charge[.]" *Ibid.* In sum, the *Green* Court did not require the trial court to refer to the facts of the case when providing instructions on identification, and we decline to impose that requirement now.

## III.

Since defendant's trial, the model charge on identification has been revised. The newest version was promulgated in 1999. Like

the model charge in place at the time of defendant's trial, the current charge does not require that a trial court comment on the evidence adduced at trial. Instead, the charge enumerates several factors a jury may need to consider when evaluating identification testimony, including the opportunity of the witness to view the offender, the witness's degree of attention on the perpetrator, the accuracy of any prior descriptions by the witness, the degree of certainty expressed by the witness in making the identification, the length of time between the witness's observation of the offense and the identification, and factors relating to cross-racial identification. As a catch-all, the charge also suggests that the jury may consider "[a]ny other factor based on the evidence or lack of evidence in the case[.]"

We endorse the approach taken in this latest version of the model charge, namely, that the court may advise jurors of certain factors to aid them in assessing the specific testimony of any eyewitness. The charge also provides that "[i]f necessary or appropriate for purposes of clarity, the judge may comment on any evidence relevant to any of the ... factors[.]" Thus, like the previous model charge, the latest version reserves to the sound discretion of the trial court the decision to add specific factual references to the identification instruction.

We recognize that there are situations in which we do require that jury instructions be "molded" or "tailored" to the facts adduced at trial. That requirement has been imposed in various contexts in which the statement of relevant law, when divorced from the facts, was potentially confusing or misleading to the jury. *See, e.g., State v. Sexton,* 160 *N.J.* 93, 733 *A.*2d 1125 (1999) (requiring tailored instruction on recklessness); *State v. Gartland,* 149 *N.J.* 456, 694 *A.*2d 564 (1997) (requiring tailored instruction on self-defense, duty to retreat); *State v. Olivio,* 123 *N.J.* 550, 589 *A.*2d 597 (1991) (requiring tailored instruction on mental states); *State v. Martin,* 119 *N.J.* 2, 573 *A.*2d 1359 (1990) (requiring tailored instruction on mental states, causation); *State v. Concepcion,* 111 *N.J.* 373, 545 *A.*2d 119 (1988) (requiring tailored instruc-

tion on recklessness); *State v. Bilek*, 308 *N.J.Super.* 1, 705 *A*.2d 366 (App.Div.1998) (requiring tailored instruction on self-defense).

Those decisions, however, do not require that trial courts comment on weaknesses in the State's evidence as urged by defendant. Instead, in each of those instances, the trial court was required to explain an abstract issue of law in view of the facts of the case. That is significantly different from requiring a trial court to comment on perceived weaknesses in identification evidence.

Moreover, except for the two cases cited by defendant, *State v. Edmonds*, 293 *N.J.Super.* 113, 679 *A*.2d 725 (App.Div.1996), *certif. denied*, 148 *N.J.* 459, 690 *A*.2d 606 (1997), and *State v. Malloy*, 324 *N.J.Super.* 525, 736 *A*.2d 532 (App.Div.1999), none of the decisions applying *Green's* identification instruction has required that instruction to include comments on perceived weaknesses in the State's evidence. *See, e.g., State v. Delbert Green*, 312 *N.J.Super.* 456, 712 *A*.2d 224 (App.Div.), *certif. denied*, 156 *N.J.* 425, 719 *A*.2d 1023 (1998); *State v. McNeil*, 303 *N.J.Super.* 266, 696 *A*.2d 757 (App.Div.1997); *State v. Middleton*, 299 *N.J.Super.* 22, 690 *A*.2d 623 (App.Div.1997); *State v. Huff*, 292 *N.J.Super.* 185, 678 *A*.2d 731 (App.Div.), *certif. denied*, 146 *N.J.* 570, 683 *A*.2d 1165 (1996), *aff'd in part*, 148 *N.J.* 78, 689 *A*.2d 723 (1997); *State v. Salaam*, 225 *N.J.Super.* 66, 541 *A*.2d 1075 (App.Div.1988); *State v. Frey*, 194 *N.J.Super.* 326, 476 *A*.2d 884 (App.Div.1984). To the extent that *Edmonds* and *Malloy* suggest a different result here, they are disapproved.

The Appellate Division in *State v. Walker*, 322 *N.J.Super.* 535, 731 *A*.2d 545 (App.Div.), *certif. denied*, 162 *N.J.* 487, 744 *A*.2d 1209 (1999), also declined to follow *Edmonds*. In *Walker*, the defendant was accused of collaborating with several other persons in multiple robberies and a homicide over a short period of time. *Id.* at 540, 731 *A*.2d 545. One of the victims identified the defendant from a photographic array, but was unable to identify him definitively at trial. *Id.* at 540–41, 731 *A*.2d 545. Two other victims identified the defendant both from photographic arrays as well as at trial. *Id.* at 542, 731 *A*.2d 545.

On appeal, the defendant claimed that the court's instruction on identification was deficient because it failed to specify which victim had made which identification, and otherwise failed to comment on inconsistencies in the identifications. *Id.* at 550, 731 *A.*2d 545. The Appellate Division held that the trial court did not commit plain error because the instructions provided were substantially in compliance with the model charge we approved in *Green.* *Id.* at 549–50, 731 *A.*2d 545.

Notably, the trial court here did not highlight for the jury that the three witnesses who furnished in-court testimony also had identified defendant out of court. Defendant may have benefitted from the trial court's omission. That might explain why defendant's trial counsel did not request a more fact-specific charge on identification; defendant may have preferred not to call attention to the multiple identifications, which might have occurred with a more factually-tailored instruction.

We are satisfied that the instructions provided in defendant's trial left no doubt that the jury properly performed its function. "[I]t is highly unlikely that a jury which sat through a . . . trial in which the primary evidence was victim identification testimony, and then heard summations which discussed those identifications at length, was unaware of the specific identifications covered by the identification instruction." *Walker, supra,* 322 *N.J.Super.* at 550, 731 *A.*2d 545. Defendant's trial was relatively straightforward, involving essentially one issue: whether Santana and the other witnesses correctly identified defendant as the man who had robbed them. The uncomplicated nature of defendant's trial is underscored by the fact that the jury asked no questions concerning identification during its brief deliberations. The record is bare of any suggestion that the jury misunderstood that its role was to determine whether the identifications of defendant were accurate.

We agree with defendant that it is important that the jury be made aware of any weaknesses in the State's evidence, identification or otherwise. To ensure that a defendant is not convicted

unless guilt is proven beyond a reasonable doubt, the jury must be assisted in critically evaluating the State's evidence. However, "our judicial system confers this responsibility upon defense counsel rather than the trial court." *Id.* at 551, 753 *A.*2d 770. We look to defense counsel, not the court, to probe the State's evidence with vigor and diligence, and our adversarial system depends on counsel for that purpose. *See* Hon. Martin Marcus, *Above the Fray or into the Breach: The Judge's Role in New York's Adversarial System of Criminal Justice,* 57 *Brook. L.Rev.* 1193 (1992) (arguing that adversarial process requires court to avoid undue commentary on evidence).

As a general rule, then, we believe that summarizing the strengths and weaknesses of the evidence is more appropriately left for counsel. *Walker, supra,* 322 *N.J.Super.* at 551, 731 *A.*2d 545. That said, we intend nothing in this opinion to foreclose the trial court from referring to the facts in a charge. We note, as does the model charge, that trial courts are free to add specific factual references to the identification instruction when necessary for clarity or when the court concludes that such references are required in the interest of justice. *State v. Parker,* 33 *N.J.* 79, 94, 162 *A.*2d 568 (1960) ("We approve, especially in a protracted trial ... with its voluminous and conflicting testimony, of a trial court's undertaking to point out to the jury the significant evidence in the case."). If a court comments on weaknesses in the State's evidence, it is "required, in the interests of fairness, to mention the State's explanations" for those weaknesses. *Walker, supra,* 322 *N.J.Super.* at 551, 731 *A.*2d 545. By the same token, if the court refers to the State's evidence in any significant way, it must also refer to the defendant's contrary contentions. Thus, we leave it to the sound discretion of the trial court to decide on a case-by-case basis when and how to comment on the evidence, consistent with the broad outlines expressed above.

## IV.

Defendant also argues that the trial court committed plain error because its identification instruction "was simply unbalanced

in favor of the State." Defendant criticizes the portion of the charge that informed the jury that:

> In order to meet its burden with respect to the identification of the individual who committed the offenses the State has presented the testimony of several witnesses. You'll recall they included Miss Santana, Mr. Power and Miss Acosta. And you will recall that those three individuals testified in this courtroom and identified the defendant in this court as the person who committed the offense or offenses. According to the witnesses, their identification of the defendant in court is based upon the observations and perceptions which they made of the defendant on the scene at the time the offense or offenses were being committed.

According to defendant, "highlighting only the pro-State identification evidence was a surefire way to guarantee that the jury's focus when deliberating on the identification issue was on that pro-State evidence, not on the whole picture."

We disagree with defendant's characterization of the charge. The instruction as a whole correctly explained that the court and the jury have separate and distinct functions to perform. In that regard, in the two sentences immediately following the portion of the charge highlighted by defendant, the court instructed: "It is your function as jurors to determine what weight, if any, to give to this testimony. You must decide whether it is sufficiently reliable evidence upon which to conclude that this defendant is the person who committed the offenses charged." Moreover, the court at least twice emphasized that it was for the jury, and the jury alone, to decide the disputed questions of fact and to evaluate the credibility of the witnesses. The court also told the jury that it would not be providing commentary on the evidence, and that any reference the court made to the evidence should be disregarded if it conflicted with the jury's recollection concerning that evidence. The court reminded the jury that there were conflicting versions of the testimony.

In addition to general instructions on reasonable doubt and the State's burden of proof, the court provided an extended charge on identification as required by *Green*. The charge emphasized that "the ultimate issue of the trustworthiness of an in-court identification" was for the jury to decide. Appropriately, the court also instructed the jury to consider each witness's ability to view the

perpetrator at the time of the robbery. Finally, the court also provided general instructions (not excerpted above) on witness credibility and provided guidance for evaluating the witnesses.

Even if we assume some small error in the portion of the charge to which defendant objects, we would not reverse under the plain-error standard because the charge as a whole thoroughly explained the law and was not clearly capable of producing an unjust result. *State v. Delibero*, 149 *N.J.* 90, 106–07, 692 *A.*2d 981 (1997). We must also consider the charge in light of the arguments made by trial counsel, as those arguments can mitigate prejudice resulting from a less-than-perfect charge. *State v. Morton*, 155 *N.J.* 383, 423, 715 *A.*2d 228 (1998). Considering the instructions in their entirety, in the context of the evidence and the arguments of trial counsel, we are convinced that the charge was fair. The charge impartially instructed the jury, which, in turn, properly discharged its function.

## V.

The judgment of the Appellate Division is affirmed.

STEIN, J., concurring

In this appeal the Court considers whether criminal jury trial instructions on identification should be tailored to fit the facts of a case. The Court concludes that trial courts may, but are not required to, formulate jury instructions that include a balanced summary of the evidence on identification adduced at trial. Although I join the Court's opinion, I write separately to encourage trial courts to include a balanced summary of the evidence in a criminal jury trial instruction whenever such an instruction would aid a jury in reaching a just result.

Trial courts in this state historically have been entrusted with the power to tailor jury instructions and to summarize the evidence presented at trial. See *State v. Martin*, 119 *N.J.* 2, 18, 573 *A.*2d 1359 (1990)("An abstract statement about causation or the defendant's state of mind is not nearly so useful as one stating the

same idea in the context of the various factual alternatives projected by the parties."); *State v. Green*, 86 *N.J.* 281, 294, 430 *A.*2d 914 (1981) (suggesting that trial courts giving identification instruction briefly review "conflicting contentions" of parties regarding identification of defendant); *State v. Parker*, 33 *N.J.* 79, 94, 162 *A.*2d 568 (1960)("We approve, especially in a protracted trial, ... with its voluminous and conflicting testimony, of a trial court's undertaking to point out to the jury the significant evidence in the case."); *State v. Young*, 97 *N.J.L.* 501, 507, 117 *A.* 713 (E. & A.1922) ("It is not said [the facts] were untruly stated, but that their recital refreshed the minds of the jury. Every comment on evidence by the court has that effect, and it is not error when, as here, the jury is instructed to rely on their own recollection."); *State v. Overton*, 85 *N.J.L.* 287, 294, 88 *A.* 689 (E. & A.1913) ("[I]t is always the right, and in many cases the duty, of the trial judge to express freely the impressions made on his mind by the evidence, thus giving the jury the benefit of his judicial experience ... provided always the ultimate decision of disputed matters of fact is fairly left to them.").

Federal district court judges, as "governor[s] of the trial," also possess the common law power "to analyze, dissect, explain, summarize, and comment on the evidence." *Logue v. Dore*, 103 *F.*3d 1040, 1045 (1st Cir.1997).

The American Bar Association's Criminal Justice Trial by Jury Standards encourages judges, when necessary, to explain the relationship of evidence to the legal issues. *ABA Criminal Justice Trial By Jury Standards* 15–4.2 at 223 (3d ed.1996). Standard 15–4.2, "Right of judge to give assistance to the jury during trial," states as follows:

(a) The court should not express or otherwise indicate to the jury his or her personal opinion whether the defendant is guilty or express an opinion that certain testimony is worthy or unworthy of belief.

(b) When necessary to the jurors' proper understanding of the proceedings, the court may intervene during the taking of the evidence to instruct on a principle of law or *the applicability of the evidence to the issues*. This should be done only when the jurors cannot be effectively advised by postponing the explanation to the time of giving final instructions.

(c) The development of innovative mechanisms to improve juror comprehension of the issues of the case and the evidence presented should be encouraged consistent with the rules of evidence and the rights of the parties.

[*Ibid.* (emphasis added).]

As the majority notes, the most recent model jury charge on identification permits trial courts to "comment on any evidence relevant to any of the ... factors" that a jury may consider, including, for instance, the opportunity of the witness to view the offender and factors relating to cross-racial identification. *Ante* at 42, 754 *A.*2d at 1159. Like the majority, I acknowledge that the decision whether to comment on the evidence properly is remitted "to the sound discretion of the trial court." *Ante* at 42, 754 *A.*2d at 1159. I further agree with the majority that trial counsel, not the trial court, ultimately is responsible for persuading the jury to adopt counsel's interpretation of the evidence. *Ante* at 45, 754 *A.*2d at 1160.

However, the trial court has the non-delegable responsibility for ensuring the fairness of the trial. As commentators have discussed, jury instructions frequently are misunderstood by juries and thus must be carefully crafted by trial courts to ensure that they fairly and clearly convey the law to the jury. *See generally* Joel D. Lieberman & Bruce D. Sales, *What Social Science Teaches Us About the Jury Instruction Process*, 3 *Psychol. Pub. Pol'y & L.* 589 (1997) (reviewing empirical research on effectiveness of jury instructions); Peter Meijes Tiersma, *Reforming the Language of Jury Instructions*, 22 *Hofstra L.Rev.* 37, 41–44 (1993) (stating that "[m]uch research by linguists, psychologists and others has confirmed that jurors tend to have great difficulty understanding the instructions that are supposed to guide their decisionmaking"); William W. Schwarzer, *Communicating with Juries: Problems and Remedies*, 69 *Cal. L.Rev.* 731, 743 (1981)(concluding that "the jury's capacity to serve as a repository of the people's sense of justice, reason, and fair play is being questioned" and suggesting ways to improve juror comprehension).

One change among many that commentators have recommended to improve juror comprehension is that trial courts incorporate a summary of the evidence in juror instructions. Jack B. Weinstein, a distinguished judge of the United States District Court for the Eastern District of New York, has argued persuasively that judicial summaries of the evidence aid in the pursuit of fairness. Jack B. Weinstein, *The Power and Duty of Federal Judges to Marshall and Comment on the Evidence in Jury Trials and Some Suggestions on Charging Juries,* 118 *F.R.D.* 161, 166 (1988). *See also* Christopher N. May, *"What Do We Do Now?": Helping Juries Apply the Instructions,* 28 *Loy. L.A.L.Rev.* 869, 870 (1995) (encouraging trial judges to "weave the evidence into the instructions, or use the threat of doing so to induce counsel to link the evidence to the law in their closing arguments"). According to Judge Weinstein, a judicial summary of the evidence can "clarify what may have been distorted by the bias of counsel's arguments" and "can increase the jury's ability to understand the proceedings it has attended, and thus increase the accuracy of verdicts." Weinstein, *supra,* 118 *F.R.D.* at 166. Another commentator has argued that trial courts should summarize the evidence in tailored jury instructions because "when the facts illuminate the abstract legal concepts set forth in the instructions, jurors' understanding of the law greatly improves." May, *supra,* 28 *Loy. L.A.L.Rev.* at 892. Additionally, "by utilizing the facts to illustrate the law, the jury's ability to use the instructions in a systematic manner is enhanced, reducing the possibility that it may overlook key elements or evidence critical to the outcome of the case." *Id.* at 893.

Although trial courts understandably may be hesitant to summarize the evidence for fear of saying too much, too little, or being unbalanced, thereby providing a potential basis for reversal, trial judges should not reflexively permit those concerns to prevail over the potential benefits of tailored jury charges. We have observed that "our judges are made of sterner stuff" than to act out of fear of reversal. *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 541, 666 *A.*2d 146 (1995). Submissions to counsel at the charge conference of a proposed instruction that incorporates a

balanced summary of the evidence should diminish the likelihood that that summary will afford a basis for reversal. See Weinstein, *supra*, 118 *F.R.D.* at 170 (stating that proposed summary of evidence should be discussed at charge conference and that "actual process of summarizing ... the evidence can be similar to the process of instructing the jury on the law in a jury charge"); *R.* 1:8–7 (requiring trial courts to "hold a charge conference on the record in all criminal cases" and stating that "[a]t the conference the court shall advise counsel of the offenses, defenses and other legal issues to be charged and shall rule on requests made by counsel").

Although I am satisfied that the trial court's charge in this case was not prejudicially unbalanced in favor of the State, the issue would not have arisen if the trial court had included in its instruction a balanced summary of all the material evidence on the question of identification. This record indicates that defense counsel adequately focused the jury's attention on the evidence that favored defendant.

The arguments of counsel, however, will not always be an adequate substitute for a methodical and impartial summary of the material evidence by the trial court. Even though not necessary in every criminal trial, inclusion of a balanced summary of the evidence in a court's jury charge generally will enhance the jury's ability to weigh the evidence and return a just verdict. In my view, the value of a fair summary of the evidence to the deliberations of an informed jury substantially outweighs the burden of formulating the charge and the slight risk of an adverse reaction by counsel. I am fully in agreement with Judge Weinstein's conclusion on the issue:

> Despite the occasional mishaps [that] can result from use of the summary ... power, most difficulties can be avoided by a trial judge who employs cautious procedures and a measure of common sense. Taking advantage of the power to summarize ... is one means of keeping jury trials fair, jury verdicts reasonable, and jurors a little less confused.

[Weinstein, *supra*, 118 *F.R.D.* at 188.]

O'HERN, J. dissenting,

"In a long series of cases, we have held that an essential ingredient to a fair trial is that adequate and understandable instructions be given to the jury." *State v. Gartland*, 149 *N.J.* 456, 475, 694 *A.*2d 564 (1997). *Gartland* cited *State v. Concepcion*, 111 *N.J.* 373, 379, 545 *A.*2d 119 (1988) for the well-settled proposition that an "instruction that is appropriate in one case may not be sufficient for another case. Ordinarily, the better practice is to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." This case is inconsistent with that principle.

## I.

Edward Robinson was convicted of the robbery of three strangers, each of whom later identified him from a photo array as the robber. However, those identifications were far from trouble-free, and could have led a reasonable juror to doubt their accuracy. In attempting to "mold" the jury instruction to the facts of the case, the trial court gave only an unbalanced focus on the aspects of the identification that were favorable to the State:

> In order to meet its burden with respect to the identification of the individual who committed the offenses the State has presented the testimony of several witnesses. You'll recall they included Miss Santana, Mr. Power, and Miss Acosta. And you will recall that those three individuals testified in this courtroom and identified the defendant in this court as the person who committed the offense or offenses.
>
> According to the witnesses, their identification of the defendant in court is based upon the observations and perceptions which they made of the defendant on the scene at the time the offense or offenses were being committed.

No mention was made to the jury of the following facts: (1) that Miss Santana told police at first that the perpetrator was named "Eddie West," not Eddie Robinson; (2) that Santana then told police a short time later that Gregory Marshall, not defendant, was the robber; (3) that Santana may have failed to pick defendant's photograph from a police book (it is disputed whether defendant's picture was in this book); (4) that Miss Acosta claimed that she was urged by Santana and Mr. Power to "sign the

picture" after they told her they had identified the perpetrator from a photo array. Nor was there ever any mention made, more generally, that the defense had elicited evidence of uncertainty and suggestiveness that would undermine the identifications.

## II.

"Correct jury charges are essential for a fair trial." *State v. Martin*, 119 *N.J.* 2, 15, 573 *A.*2d 1359 (1990). A jury charge "is a road map to guide the jury, and without an appropriate charge a jury can take a wrong turn in its deliberations." *Ibid.* "So critical is the need for accuracy that erroneous instructions on material points are presumed to be reversible error." *Ibid.* An identification instruction in a case where identification is a contested issue is certainly a material point, one that is "a fundamental and essential trial issue." *State v. Green*, 86 *N.J.* 281, 291, 430 *A.*2d 914 (1981).

In *Green*, the Court first held that jury charges, particularly identification charges, must be molded to the facts with specific reference to the facts. *Id.* at 293–294, 430 *A.*2d 914. The Court ruled that an identification instruction would have passed muster:

> if the court had specifically charged the jury that it was the State's burden to prove beyond a reasonable doubt that it was defendant who had raped Ms. Wadley, that it was not defendant's burden to prove that he was elsewhere when the offense occurred, and that the State's case depended on the eyewitness identification by Ms. Wadley, *setting forth the respective factual contentions relative to her descriptions.*
>
> [*Id.* at 293, 430 *A.*2d 914 (emphasis supplied).]

As *Green* emphasized, even the pre-*Green* model jury instruction suggested to the trial court: "here consider briefly reviewing the conflicting contentions of the State and the defendants relating to the above." *Id.* at 294, 430 *A.*2d 914.

After *Green*, we held that jury instructions, including those concerning areas beyond identification, should not simply recite the applicable law without reference to the facts. *Concepcion, supra,* 111 *N.J.* at 379, 545 *A.*2d 119. In *Concepcion*, the Court found plain error in a jury charge on manslaughter that failed

sufficiently to define recklessness in the context of the facts of the case. *Id.* at 379–380, 545 *A.*2d 119. Specifically, the jury instruction did not set forth all of the facts related to the defendant's conduct that was relevant to a finding (or lack thereof) of recklessness. We held that the charge should have instructed the jury not only to consider that the defendant left a loaded gun on a bookshelf, but also his "bringing a group of people into his apartment, allowing them into the living room although a loaded gun was there, and ... the way he tried to wrestle it from the victim before the victim was shot." *Id.* at 380, 545 *A.*2d 119. To reiterate, *Concepcion* requires that the instruction be molded "in a manner that explains the law to the jury in the context of the material facts of the case." *Id.* at 379, 545 *A.*2d 119.

We have consistently adhered to the rule announced in *Concepcion.* In *State v. Martin,* 119 *N.J.* 2, 18, 573 *A.*2d 1359 (1990), a causation charge was deemed plain error in a felony murder case because the court "failed to explain how the evidence could affect [the] elements [of causation.]" Citing *Concepcion,* the Court made clear that

> Particularly when the trial projects conflicting versions of the facts, the court should mold its instructions to the factual hypotheses of the parties. An abstract statement about causation or the defendant's state of mind is not nearly so useful as one stating the same idea in the context of the various factual alternatives projected by the parties.
>
> [*Ibid.* (citations omitted).]

Similarly, an abstract reading of the model jury charge on identification is ineffective when compared to a charge that incorporates the law on identification with references to the various factual contentions in the case that bear on identification.

One year later, in *State v. Olivio,* 123 *N.J.* 550, 567, 589 *A.*2d 597 (1991), we found reversible error in a jury instruction that "failed to provide an adequate explanation of the standard for determining 'mentally defective'" as that phrase is defined in the sexual-assault statute with respect to a mentally-impaired victim. The Court stated that the "jury must be given an instruction that follows a correct legal standard of mental defectiveness and ex-

plains that concept in context of the evidence that relates to the complainant's mental condition and conduct." *Id.* at 568. *Olivio* reinforces the proposition that a jury instruction on a critical point (and nothing could be more critical than an instruction on identification when improper identification is the principal defense) must be molded with reference to the facts.

As recently as in 1997, this Court unanimously reaffirmed its commitment to the *Concepcion* doctrine in *Gartland.* In that case, the Court held that an explanation of self-defense and the doctrine of retreat should "have been tailored to the circumstances of the case." *Gartland, supra,* 149 *N.J.* at 476, 694 *A.*2d 564. Without proper reference to the facts of the case that bore on self-defense and retreat, the jury might well have confused those issues. *Ibid.* Similarly, the generic, non-case-specific charge on identification in this case left the jury with no feel for the practical aspects of applying the law of identification to the facts.

I agree that not every case omitting reference to facts warrants reversal under the plain error doctrine. *State v. Jordan,* 147 *N.J.* 409, 688 *A.*2d 97 (1997) (holding that failure to give *Kociolek* charge, instructing jury not to give too much trust to accuracy of testimony associated with any extrajudicial oral statements, did not have capacity to bring about unjust result). It is one thing however, not to tailor the identification charge to the facts of the case. It is quite another thing to give an unbalanced rendition of the facts. The State acknowledges that for the jurors the judge is an "authority figure." When the most important person in the courtroom emphasizes the evidence favorable to the State, what is the jury to think? Consider that that is all that counts.

The Model Charge Committee has recently acknowledged that the trial judge, for purposes of clarity, may comment on evidence relevant to identification.[1] *Model Jury Charges (Criminal),* "Out–

---

[1] The Model Charge Committee has suggested that the trial judge comment on the following factors concerning the issue of in-court or out-of-court identifications: (1) the witness' opportunity to view the person who committed the offense

of–Court Identification" (1999). Identification issues, by their very nature, are fact-specific. The Committee's proposed change has furnished judges with a short list of the generally relevant factors and left space for trial courts to fill in the details. The list is not exhaustive or exclusive. This list of issues should be tailored to the facts.

Just as the explanation of recklessness in *Concepcion* was deficient because a general charge, simply parroting the model charge, could not approximate how the concept of recklessness might apply to that particular case, with all of its factual distinctions, and the explanation of self-defense in *Gartland* could not adequately address the peculiar facts of that battered woman's case without reference to those facts and their bearing on self-defense, a generic charge setting forth the law of identification with no reference to the contrasting evidence of identification did not explain "the law to the jury in the context of the material facts of the case." *Concepcion, supra,* 111 *N.J.* at 379, 545 *A.*2d 119.

The instruction in this case was deficient not only because it violated *Green* and its progeny, but because it also was biased in favor of the State. In *State v. Walker,* 322 *N.J.Super.* 535, 552, 731 *A.*2d 545 (1999), the Appellate Division held that an instruction that highlights only the evidence favorable to the State is "misleading" and unfair to the criminal defendant.[2] Similarly, the

---

at the time of the offense; (2) the witness' degree of attention on the perpetrator when [he or she] observed the crime being committed.; (3) the accuracy of any description the witness gave prior to identifying the perpetrator; (4) the degree of certainty expressed by the witness in making the identification;(5) the length of time between the witness' observation of the offense and the identification; (6) the circumstances under which the identification was made; (7) any other factor based on the evidence or lack of evidence in the case which [the juror] consider[s] relevant to [his or her] determination whether the in-court [or out-of-court] identification was reliable; or (8) any other relevant factor present in the case. *Model Jury Charges (Criminal),* "Out–of–Court Identification" and "In–Court Identification" (1999).

2 The *Walker* court responds to this problem by advising the trial court to give a generic model charge on identification that makes no reference to the facts.

instruction in this case was misleading to the jury when the court stated "those three individuals testified in this courtroom and identified the defendant in this court as the person who committed the offense or offenses" with no mention that Miss Santana at first told the police that the perpetrator's name was "Eddie West" and then "Gregory Marshall," that she initially failed to pick defendant's photograph from a police book, and that Miss Acosta claimed she was urged by Mr. Power and Miss Santana to "sign the picture" after they told her they had picked a perpetrator from the photo array.

This identification was far from ironclad; yet, it was presented to the jury as such. A jury instruction is said to be "a road map to guide the jury." *Martin, supra,* 119 *N.J.* at 15, 573 *A.*2d 1359. In this case, the court's instruction was as though the directions that accompanied the map gave only right-hand turns not the left-hand turns, a sure fire way to get someone lost. By explaining that the State bore the burden of proving identification and then highlighting only the State's identification evidence, the court provided a good guarantee that the jury's focus during its deliberation on the identification issue would be on the State's evidence and not all the evidence. As it was plain error in *Concepcion* to define recklessness solely in terms of the defendant having left a loaded gun on a bookshelf without mentioning his attempts to wrestle it from the victim, it was plain error in this case to charge the jury on identification with reference only to the State's evidence.

An unbalanced jury charge on identification in a case in which identity is the critical issue constitutes plain error clearly capable of producing an unjust result. Because defendant was denied a fair trial, I would reverse the judgment of the Appellate Division.

Justice LONG joins in this opinion.

---

This approach is entirely contrary to the holdings in *Green, supra, Concepcion, supra,* and *Gartland, supra.*

*For affirmance*—Chief Justice PORITZ and Justices STEIN, COLEMAN, VERNIERO and LaVECCHIA—5.

*For reversal*—Justices O'HERN and LONG—2.