NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1758-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JAMAL SHELLY, a/k/a
JAMAL AL-KAREEM SHELLY,
JAMAAL SHELLY, JAMAAL A.
SHELLEY, and JAMAL A. SHELLY,

 Defendant-Appellant.
__________________________

 Submitted May 10, 2017 – Decided May 31, 2017

 Before Judges Simonelli and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Law Division, Essex County, Indictment
 No. 13-02-0293.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Lon Taylor, Assistant Deputy
 Public Defender, on the brief).

 Carolyn A. Murray, Acting Essex County
 Prosecutor, attorney for respondent (Tiffany
 M. Russo, Special Deputy Attorney General/
 Acting Assistant Prosecutor, of counsel and
 on the brief).
PER CURIAM

 Following a jury trial, defendant Jamal Shelly was convicted

of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-

5(b). Judge Martin G. Cronin imposed a ten-year term of

imprisonment with a five-year period of parole ineligibility

pursuant to the Graves Act, N.J.S.A. 2C:43-6. On appeal, defendant

raises the following contentions:

 POINT I

 THE TRIAL COURT'S IDENTIFICATION INSTRUCTION
 WAS NOT TAILORED TO THE FACTS OF [DEFENDANT'S]
 CLAIM THAT THE PHOTO LICENSE UNDERMINED THE
 RELIABILITY OF THE OFFICER'S OUT-OF-COURT AND
 IN-COURT IDENTIFICATIONS. (NOT RAISED BELOW).

 POINT II

 THE IMPOSITION OF A MAXIMUM TEN-YEAR TERM OF
 IMPRISONMENT, SUBJECT TO A MANDATORY FIVE-YEAR
 PAROLE BAR, WAS EXCESSIVE.

We affirm.

 I.

 We derive the following facts from the record. On October

12, 2012, Lieutenant Daniel Francis and Sergeant Marquis Carter

of the Essex County Prosecutor's Office were on patrol in an

unmarked patrol car when they saw a silver Lincoln LS with tinted

windows and no license plates travelling on Fifteenth Avenue in

Newark, a high-violence area. Francis activated the patrol car's

strobe lights and "wig-wag" headlights and stopped the Lincoln.

 2 A-1758-15T1
As Carter was exiting the patrol car, the Lincoln sped away.

Francis activated the patrol car's siren and proceeded to follow

the Lincoln. Francis decided to discontinue the pursuit and turned

off the strobe lights and siren when the Lincoln travelled the

wrong way down a one-way street, but continued to travel parallel

to the Lincoln and kept it in sight.

 Francis resumed the pursuit when the Lincoln turned onto

Muhammad Ali Boulevard and proceeded southbound on Bergen Street.

He followed the Lincoln onto Custer Street, a very well-lit street,

and saw the Lincoln stop and the driver and front seat passenger,

later identified as defendant, attempt to exit and then re-enter

the vehicle. Francis re-activated his headlights and strobe lights

and pulled behind the Lincoln to prevent it from moving. The

driver ran and Francis chased him approximately twenty-five to

fifty feet, but abandoned the chase and returned to the Lincoln

to assist Carter.

 When Francis returned to the Lincoln, he saw that the driver

and passenger side doors were open, and saw defendant standing by

the passenger side trying to retrieve something from inside the

vehicle. Francis saw defendant's face and believed he was reaching

for a weapon. Fearing for his life, Francis drew his weapon,

pointed it directly at defendant's face, and said he would shoot

defendant in his face if defendant did not show his hands. Francis

 3 A-1758-15T1
saw that defendant had a "fat face" and dark circles around his

eyes. Defendant fled. Francis did not pursue him because a third

individual had exited the Lincoln and attempted to run, but was

apprehended.

 Francis looked inside the Lincoln to see if there were more

occupants. He found no one inside, but saw in plain view a .357

caliber revolver on the driver's seat and a 9-millimeter semi-

automatic handgun in an open box on the passenger-side floorboard,

the area where he saw defendant reaching. Both weapons were loaded

with hollow-point bullets.

 Francis also found a photo driver's license in the cup holder

and immediately recognized the person in the photo as the front-

seat passenger he had seen just minutes earlier. The driver's

license bore defendant's name. In addition to testifying about

his out-of-court identification of defendant from the driver's

license photo, Francis made an in-court identification.

Defendant's sole defense was that Francis misidentified him as the

passenger based on the photo driver's license.

 II.

 Judge Cronin gave a jury charge on identification that

mirrored Model Jury Charge (Criminal), "Identification: In-Court

and Out-of-Court Identifications" (2012). The judge tailored that

part of the charge concerning confidence and accuracy as follows:

 4 A-1758-15T1
 You heard the testimony that Lieutenant
 Francis made a statement at the time he
 identified the defendant from a photo. His
 level of certainty that the photograph he
 selected was . . . in fact, the person who
 committed the crime.

The judge also tailored that part of the charge regarding the

jury's evaluation of the reliability of a witness' identification

as follows:

 In evaluating the reliability of a
 witness' identification, you should also
 consider the circumstances under which any
 out-of-court identification was made, and
 whether it was the result of a suggestive
 procedure. In that regard, you may consider
 everything that was done or said by law
 enforcement to the witness during the
 identification process. You should consider
 that the prior identification was made from a
 single photograph appearing on a driver's
 license.

 In Point I, defendant contends for the first time that the

charge was not tailored to the facts of the case, and the vague

references to the photo driver's license were misleading.

Defendant argues Judge Cronin did not tailor the charge to instruct

the jury: (1) that Francis' view of the photo driver's license was

the identification procedure; (2) on how to assess whether Francis'

in-court identification was a result of merely looking at the

driver's license photo rather than his observation of the fleeing

passenger; and (3) on how stress impacts the reliability of an

identification in assessing Francis's testimony that he believed

 5 A-1758-15T1
the passenger was reaching inside the Lincoln for a weapon and he

feared for his life. Defendant also argues the judge improperly

omitted the show-up language in the charge.1

 "Appropriate and proper jury charges are essential to a fair

trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State

v. Reddish, 181 N.J. 553, 613 (2004)). "The trial court must give

'a comprehensible explanation of the questions that the jury must

determine, including the law of the case applicable to the facts

that the jury may find.'" Id. at 159 (quoting State v. Green, 86

N.J. 281, 287-88 (1981)). "Thus, the court has an 'independent

duty . . . to ensure that the jurors receive accurate instructions

on the law as it pertains to the facts and issues of each case,

irrespective of the particular language suggested by either

party.'" Ibid. (quoting Reddish, supra, 181 N.J. at 613).

 A jury charge is required to be tailored to the facts when a

statement of the law "divorced from the facts, [is] potentially

confusing or misleading to the jury." State v. Robinson, 165 N.J.

32, 42 (2000) (citations omitted). A trial court is not required

to comment on the evidence. Id. at 43. "[I]t is often important

1
 Defendant relies on the unpublished opinion, State v. Orival,
No. A-3410-12 (App. Div. Oct. 17, 2014), to argue that a photo
driver's license has been recently viewed as the equivalent of a
showup identification. However, unpublished opinions do not
constitute precedent or bind us. R. 1:36-3; Trinity Cemetery
Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001).

 6 A-1758-15T1
to mold jury instructions so that the jury clearly understands how

the evidence in [a] particular case relates to the legal concepts

addressed in the charge." State v. Gentry, 439 N.J. Super. 57,

72 (App. Div. 2015) (citation omitted). On the other hand,

tailoring of an instruction may not be essential if the facts, the

parties' respective positions, and the legal principles are clear.

State v. Angoy, 329 N.J. Super. 79, 85 (App. Div.), certif. denied,

165 N.J. 138 (2000). Also, a "party is [not] entitled to have the

jury charged in his or her own words; all that is necessary is

that the charge as a whole be accurate." State v. Jordan, 147

N.J. 409, 422 (1997) (citations omitted). There is also a

presumption of correctness in the model jury charges. See State

v. R.B., 183 N.J. 308, 325 (2005) (stating trial court's obligation

to deliver model charges); Mogull v. CB Comm. Real Estate Grp.,

Inc., 162 N.J. 449, 466 (2000) (noting "[i]t is difficult to find

that a charge that follows the Model Charge so closely constitutes

plain error").

 When a defendant fails to object to an error regarding a jury

charge, we review for plain error. State v. Funderburg, 225 N.J.

66, 79 (2016). "Under that standard, we disregard any alleged

error 'unless it is of such a nature as to have been clearly

capable of producing an unjust result.'" Ibid. (quoting R. 2:10-

2). "The mere possibility of an unjust result is not enough. To

 7 A-1758-15T1
warrant reversal . . . an error at trial must be sufficient to

raise 'a reasonable doubt . . . as to whether the error led the

jury to a result it otherwise might not have reached.'" Ibid.

(quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).

 There was no error, let alone plain error, in the

identification charge. The charge accurately instructed the jury

on the law as it pertained to the facts. The charge specifically

instructed the jury to: (1) consider Francis' level of stress and

his confidence and accuracy in identifying defendant from the

driver's license photo as the person who committed the crime; (2)

evaluate the reliability of Francis' out-of-court identification;

and (3) consider that Francis made the out-of-court identification

from the driver's license photo. The charge was not potentially

confusing or misleading, and it required no further tailoring.

 A show-up instruction was not warranted. "Showups are

essentially single-person lineups: a single suspect is presented

to a witness to make an identification. Showups often occur at

the scene of a crime soon after its commission." State v.

Henderson, 208 N.J. 208, 259 (2011).

 Francis did not identify defendant through a showup

procedure. He identified defendant from a photo driver's license

he found in plain view inside the Lincoln after having seen

defendant's face minutes earlier. Defendant cites to no authority

 8 A-1758-15T1
that Francis' out-of-court identification based on a driver's

license photo required a show-up instruction. Further, there was

no evidence whatsoever that the procedure was impermissibly

suggestive. Defendant's identification originated from Francis'

own observation of someone he believed committed the crime of

unlawful possession of a weapon. See State v. Romero, 191 N.J.

59, 79 (2007). The identification charge was proper and provides

no basis for reversal.

 III.

 Defendant contends in Point II that his sentence is excessive.

He does not challenge Judge Cronin's findings of aggravating and

mitigating factors. Rather, he argues the judge failed to consider

the minimal nature of the offense where there was no underlying

crime, such as a robbery, no discharge of the weapon, and no

injuries.

 We review a judge's sentencing decision under an abuse of

discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014).

As directed by the Court, we must determine whether:

 (1) the sentencing guidelines were violated;
 (2) the aggravating and mitigating factors
 found by the sentencing court were not based
 upon competent and credible evidence in the
 record; or (3) the application of the
 guidelines to the facts of [the] case makes
 the sentence clearly unreasonable so as to
 shock the judicial conscience.

 9 A-1758-15T1
 [Ibid. (quoting State v. Roth, 95 N.J. 334,
 364-65 (1984)).]

Applying this standard, we discern no reason to disturb defendant's

sentence.

 Defendant was eligible for an extended-term sentence as a

persistent offender pursuant to N.J.S.A. 2C:44-3(a), which would

have exposed him to a sentence of between ten to twenty years.

The State moved for an extended-term sentence and requested a

twelve-year sentence with a six-year period of parole

ineligibility, but Judge Cronin denied the motion. Citing

defendant's extensive criminal history, which included several

convictions for unlawful possession of a weapon, and the fact that

defendant was on probation when he committed the present offense,

the judge found aggravating factors N.J.S.A. 2C:44-1(a)(3), "[t]he

risk that the defendant will commit another offense;" N.J.S.A.

2C:44-1(a)(6), "[t]he extent of the defendant's prior criminal

record and the seriousness of the offenses of which he has been

convicted;" and N.J.S.A. 2C:44-1(a)(9), "[t]he need for deterring

the defendant and others from violating the law[.]" Because

defendant accepted responsibility for his conduct, the judge found

mitigating factor N.J.S.A. 2C:44-1(b)(9), "[t]he character and

attitude of the defendant indicate that he is unlikely to commit

another offense[.]" In imposing the maximum sentence, the judge

 10 A-1758-15T1
emphasized the significance of the aggravating factors and

defendant's criminal record.

 We have considered defendant's contention in light of the

record and applicable legal principles and conclude it is without

sufficient merit to warrant discussion in a written opinion. R.

2:11-3(e)(2). We affirm substantially for the reasons Judge Cronin

expressed at sentencing. We are satisfied that the judge did not

violate the sentencing guidelines and the record amply supports

his findings on aggravating and mitigating factors. The sentence

is clearly reasonable and does not shock our judicial conscience.

 Affirmed.

 11 A-1758-15T1